# AUGUST FREDING v. CITY OF MINNEAPOLIS AND OTHERS.[1]

April 5, 1929.

No. 27,185.

*Mart M. Monaghan,* for appellant.
*Neil M. Cronin,* City Attorney, for respondents.

HILTON, J.

Appeal from an order denying plaintiff's motion for a temporary injunction and discharging a restraining order.

[1]Reported in 224 N. W. 845.

Plaintiff is a resident, citizen and taxpayer of the defendant city of Minneapolis, a municipal corporation of Minnesota, operating under a home rule charter adopted in pursuance of art. 4, § 36, of the state constitution. The other defendants are the mayor, aldermen and other named officers of the city. Plaintiff alleges ownership of certain described real estate abutting on University avenue in said city (the locus of the improvement hereinafter referred to) and instituted this action in his own behalf and for the benefit of others similarly situated. The action seeks to prevent the repaving of a designated portion of the avenue in question, the issuance and sale of bonds and the laying and collecting of special assessments therefor, or the paying of the expense of repaving or any part thereof out of the general funds of the city. A restraining order was issued but afterwards discharged, a temporary injunction having been refused. The complaint contained the necessary allegations, some of which were denied by the answer, some admitted and others setting forth affirmative declarations by way of defense. There was no reply. The latter allegations referred to, in so far as material, must therefore be considered as admitted.

The grounds of attack are three in number: (1) The service connections with gas, water and sewer have not been made as required by c. IX, § 1, city charter; (2) the action of the council in ordering brick pavement at a cost of $5.50 per square yard instead of resurfacing at 70¢ per square yard is arbitrary and unreasonable; (3) the Elwell law and its amendments are unconstitutional and void, and therefore the whole street improvement proceeding is void. They will be considered in their order, first however referring to a limitation on the scope of the issues here involved.

The proceedings were instituted under the provisions contained in the so-called Elwell law (L. 1911, p. 229, c. 185, as amended) which acts were incorporated by reference into c. XX of the city charter. There was a strict compliance with the terms of the charter. An appeal is allowed from the action of the city council in such proceedings but none was taken. Plaintiff's right by appeal was exclusive except as to the claim of a want of power or jurisdic-

tion of the city to make the improvement or assessment. G. N. Ry. Co. v. City of Minneapolis, 142 Minn. 308, 172 N. W. 135; A. A. White Townsite Co. v. City of Moorhead, 120 Minn. 1, 138 N. W. 939; McKeen v. City of Minneapolis, 170 Minn. 124, 212 N. W. 202; Peterson v. City of Minneapolis, 172 Minn. 604, 216 N. W. 228; 4 Dunnell, Minn. Dig. (2 ed.) § 6889a.

1. Chapter IX, § 1, of the city charter provides:

"The City Council * * * shall require, before any street is paved, that the gas, water and sewer pipes be laid therein and connection made with the front line of each lot, * * * In the business portions of the city the word 'lot' shall be construed to mean a subdivision of twenty-two (22) feet front."

The part of University avenue here referred to is a business portion of the city. Under the situation here involved and the object in view, we think the above quoted provision is directory and not mandatory. It is not an integral part of the grant of power to pave streets. A contrary holding is not required. The use of the word "shall" is not decisive.

The purpose must have been to prevent, as far as reasonably possible, the necessity of tearing up the pavement for the purpose of making service connections. The answer alleges that it has always been the practice of the city, before laying pavement, to require that water and sewer pipe connections with the mains for the purposes of abutting property owners be placed in the street extending from the mains to the curb line instead of to the front line of the lots; that to require such connections to be made with the front line of each (22 ft.) lot would place a useless burden and expense upon the property owners; that in the case of the property abutting upon University avenue here involved, manufacturing plants and other industries occupy more than one lot, some of them occupying an entire block, and there is no use or need of more than one or two connections to supply the necessities thereof; that paving is often laid in front of vacant and unoccupied lots and the nature and location of structures that may be built thereon determine the proper

place for making such connections; that proper engineering practice requires that such connections be made to the curb line instead of the front line of abutting property; that in proceeding with the repaving of University avenue the city adopted this plan and method of extending connections to the curb line so that when connections were later made it would not be necessary to destroy the pavement to make them and that the city is making all necessary connections as required by the abutting property owners.

The fact that the city has always adopted the course outlined is significant. See also c. IX, § 5, city charter. The charter provision refers to connection with gas mains. The city has no power to compel the laying of gas pipes by property owners, nor can either the city or the gas company compel the use of gas.

■ Much need not be said as to the contention that the action of the city was arbitrary and unreasonable. Upon the recommendation of the engineering department of the city, the course being followed was decided upon by the city council. There is nothing in the record to warrant a conclusion that the method was an improper one or that the cost would be excessive. The mere fact that in other portions of the city, under the situations there existing, a resurfacing of certain pavement was had rather than the laying of new pavement is of no moment. For the purposes of this case, the allegations found in the answer as to the reasonable cost and proper method of doing the work here involved, not being denied, are controlling.

■ The original Elwell law was L. 1911, p. 229, c. 185. By c. XX of the home rule charter of Minneapolis "Chapter 185, General Laws of 1911, * * * as amended by Chapter 345, General Laws of 1913, Chapter 86, General Laws of 1915; Chapters 11 and 103, General Laws of 1917, and Chapter 219, General Laws of 1919, relating to the acquisition of lands for streets, parks and parkways and improvement thereof (Elwell Act)" were made a part of the city charter as fully and to the same extent as if incorporated therein at large. There was a further amendment in 1925 [L. 1925, p. 676, c. 417, 1 Mason Minn. St. §§ 1553, 1554, 1555, 1558, 1563].

The third ground of attack need not be considered here because, irrespective of the claims made as to the unconstitutionality of the legislative acts, it was competent for the city to adopt their provisions and incorporate them as it did in its charter.

Order affirmed.