# H. S. WHIPPLE v. WILLIAM MAHLER AND ANOTHER.[1]

August 6, 1943.

No. 33,381.

[1]Reported in 10 N. W. (2d) 771.

*Lawrence R. Allison* and *Donald Wakefield,* for appellants.

*H. S. Whipple, pro se.*

LORING, JUSTICE.

This is an appeal from an order of the district court denying defendants' motion to vacate and set aside a default judgment. It is also an appeal from the judgment.

There are two assignments of error with reference to the

judgment, one by each defendant, identical in form, and stated in general terms, *viz.:* "The court erred in entering and docketing the judgment in favor of respondent and against appellant \* \* \*." No specific grounds of error are set out. Under these assignments defendants attempt to argue that the complaint did not state a cause of action against either and that parties and actions were misjoined. They also argue that the judgment was improperly entered without order of the court. Obviously, the assignment of error is too broad and general in its terms to raise these questions, each of which should have been assigned specifically. As well said in Dunnell, Minn. Practice, § 1793: "Each assignment must be single, concise, certain and complete in itself \* \* \* An omnibus assignment is unavailing; counsel must put his finger on the specific error."

■ Even if plaintiff's treatment of the argument should be considered a waiver of proper assignments of error, the result must be adverse to defendants. The question whether there is a misjoinder of parties must be raised by answer or demurrer. Misjoinder of causes must be demurred to or it is waived. 5 Dunnell, Dig. & Supp. § 7508. It cannot be raised for the first time on appeal from the judgment.

■ The complaint, which was all the clerk had before him, obviously states a cause of action against each defendant. It alleges, in substance, that in a divorce action in which defendants were adversaries the court adjudged that defendant William pay plaintiff $100 in addition to $25 previously ordered paid. This adjudication, which was sought by defendant Evelyn for this plaintiff's benefit, was a conclusive determination in that suit of the reasonable value of this plaintiff's services. Therefore, that determination became *res judicata* as to both parties as to the value of plaintiff's services, and defendants are estopped to challenge its amount. Where, as here alleged, the court required direct payment to the attorney, he is a beneficiary of the adjudication and may sue as for a liquidated amount. The fact that the complaint also alleged the reasonable value of the services cannot be taken advantage of for the first time

on appeal. Dunnell, Minn. Pleading (2 ed.) § 911. While it is the primary obligation of the husband under such a decree to pay the fees adjudicated, nevertheless the reasonableness of the value of the services rendered must be determined, and if there is a promise by the wife to pay for them, express or implied from the request to perform them, the reasonable value is determined by the decree, and, in the absence of agreement to the contrary, she is estopped to challenge it.

■ On the question of irregularity in the entry of judgment, since the suit was upon an adjudicated liability, the clerk properly entered judgment as upon a suit for a liquidated sum.

■ Moreover, it was originally held by this court that it would not consider an irregularity of procedure in the assessment of recovery in the entry of judgment upon default unless the aggrieved party had moved the trial court for relief. Babcock v. Sanborn, 3 Minn. 86 (141). This case was reversed in Reynolds v. La Crosse & Minn. Packet Co. 10 Minn. 144 (178). The reversal was based largely upon the views expressed by Chief Justice Emmett in Babcock v. Sanborn, *supra,* and upon the strict construction of the statute given by this court in the Reynolds case which empowered this court to reverse, affirm, or modify the judgment or order appealed from. Pub. St. 1849-1858, c. 71. As to matters of irregularity in procedure where the remedy in the trial court is expeditious and more effective than could be given in this court, we prefer to follow the rule originally established in Babcock v. Sanborn, which held that in such procedural matters, where adequate and expeditious relief could be obtained by motion in the trial court, an appellant would not be heard to raise the question in this court unless he had first applied to the trial court for relief by motion to set aside or vacate the judgment and for a reassessment of the damages or unliquidated sums claimed in the action. The court in the Babcock case followed the New York practice. It said (3 Minn. '89[145]):

"* * * But it is quite evident, from the provision of the consti-

tution creating this court (Const. Art. VI, § 2), that it is designed as a court of review, for the correction of errors submitted by inferior tribunals, and is not to exercise original jurisdiction, except where it is conferred by law; we will therefore not entertain questions which have not received the actual decision of the tribunal from which they come, unless it is quite evident that substantial error has been committed, and adequate relief cannot be had from the court below. In the case of *Karns v. Kunkel* [2 Minn. 268 (313)], decided at the December term of 1858, we held that a writ of error would lie to a judgment entered upon default, and that where the record disclosed that there was no cause of action against the defendant, we would reverse it. But because the statutes (Minn. Stat. (New Ed.), p. 621, § 2, and p. 623, § 22) allow all final judgments to be brought into this court by appeal or writ of error, it does not follow that we are bound to entertain questions which may appear on the record, where the court below had adequate power to give the relief sought, had the party seen fit to apply to its jurisdiction.

"We have frequently held that all questions of error committed by clerks in the taxation of costs, must, in the first instance, be corrected by the court below on motion; we now decide that errors committed by them in the assessment of damages, whether by miscalculation of figures, or the erroneous application of principles of law, are subject to the same practice."

Any other doctrine would be out of harmony with the administration of expeditious justice. If this court were to entertain such a question upon appeal, it could, upon reversal, only send the case back to the trial court for a proper assessment of the recovery. That a defaulting defendant could consume time by taking an appeal to this court in a matter involving merely procedure, where a prompt and efficacious remedy could be had in the trial court, does not impress us as having been within the contemplation of the legislature when it enacted the statutes relative to this court's powers on appeal. We do not think it intended to impose any

such requirement as that indicated in the Reynolds case, 10 Minn. 144 (178). We therefore overrule it insofar as it pertains to such procedural matters, and we reinstate the rule of Babcock v. Sanborn, 3 Minn. 86 (141). The defendants, not having sought relief in the trial court for the clerk's alleged irregular action in entering the judgment, will not be heard upon that question here.

■ Defendants characterize their motion as one to vacate the judgment. In reality it is not a motion to vacate, but one to open the default judgment. Being a motion to open rather than to vacate the judgment, it was addressed to the discretion of the trial court. 3 Dunnell, Dig. & Supp. § 5108.

Defendants concede the service of the summons and complaint upon them, attempt to excuse their failure to appear or answer on the ground of inadvertence, furnish affidavits of merits and proposed answers, and ask that the judgment be vacated and set aside. If they are entitled to have the judgment opened and to be allowed to answer, it is solely upon the grounds of excusable neglect. They were served with the summons and complaint at a time when they were engaged in moving from their home in Monticello to a farm near Hanover, Wright county. Each defendant in his affidavit presented to the trial court in support of the motion stated: "That the said summons and complaint was mislaid in the confusion of moving and this affiant inadvertently failed to interpose an answer in said action. That affiant did not again recall such service until the sheriff of Wright county informed affiant that an execution had been issued to him in said action." This is the entire ground upon which the relief is sought. Neither defendant asserts any other excuse. They do not assert that there was any misapprehension as to the character or effect of the papers served on them. They had had at least one case in court in which the plaintiff had performed the services for which he now seeks to recover. The showing made is one only of forgetfulness, which may have been due to the fact that the parties to the divorce action had remarried.

The case before us comes squarely within the rule laid down in Moot v. Searle, 165 Minn. 308, 206 N. W. 447, wherein it was held

that mere forgetfulness is not excusable neglect. There the trial court had refused to open a judgment. The defendant's showing of forgetfulness was supplemented by the statement that he did not suppose that a summons could be served in the way it was served. Here we have no such complication, and the forgetfulness stands alone. We find no abuse of discretion in denying defendants' motion to open the judgment.

■ Defendants also assert that the summons did not appear as "the first paper seen upon opening and inspecting the face of the papers served," in compliance with District Court Rule 13(d), (Mason St. 1940 Supp. p. 1756). Neither defendant claims to have been misled by the improper arrangement of the papers.

The judgment and order are affirmed.

JULIUS J. OLSON, JUSTICE (dissenting).

There is but one question for decision here—whether the trial court erred in refusing defendants' motion for opening a default judgment against both of them and for leave to answer.

The action was brought to recover attorney's fees claimed to have been earned in a divorce action. In his complaint plaintiff alleges that "on and between April 9, 1935 and July 23, 1938, said plaintiff, at the special instance and request of defendant Evelyn Mahler performed professional services for her in procuring a divorce from the defendant, William Mahler"; that "said services rendered were of the reasonable worth and value of $125"; that during the course of the divorce proceedings Evelyn as plaintiff in that case made application to the court for an order requiring the husband "to furnish her [the wife] with attorney fees, suit money, and alimony and that on July 16, 1935 the court made its order requiring" the husband "to pay $25.00 to plaintiff herein as attorney for" Evelyn; that later, "and at the conclusion of the trial," a further order was made whereby the husband "was ordered to pay to plaintiff's attorney the further sum of $100" as attorney fees in that action; that on December 30, 1935, "judgment was entered thereon"; that the husband "has failed and refused to comply with

the orders of court aforesaid and no part thereof has been paid and that said defendants are indebted to the plaintiff for the sum of $125 for attorney fees in said divorce action."

Thus it clearly appears that as to defendant Evelyn liability is predicated upon a *quantum meruit* contract between plaintiff and her. As to defendant William, obviously not a party to any such contractual liability, the cause is founded upon what the court ordered him to pay in the divorce proceeding. By throwing these claims into what the pleader thinks is a single cause of action against both defendants, he "demands judgment against said defendants and each of them for the sum of $125 plus accrued interest at the rate of 6% per annum from December 30, 1935," with costs. Defendants not having answered within the statutory period, plaintiff then proceeded to have the clerk enter judgment by default on May 12, 1942, for $183.95, without procuring any findings or furnishing proof of any kind to the court, evidently relying upon the provisions of Minn. St. 1941, § 544.07(1), (Mason St. 1927, § 9256[1]), and wholly ignoring the next subsection, § 544.07(2), (§ 9256[2]), here applicable at least as to the claimed cause against Evelyn.

On or about June 23, 1942, defendants were informed by the sheriff that he had an execution against them. On that day they repaired to the law office of Mr. Allison, one of their present counsel, and laid their facts before him. In separate affidavits they aver that the summons and complaint were personally served upon Evelyn at Monticello on April 14, 1942. Substituted service was made by leaving an extra copy with her for William. At the time these papers were so served these parties were moving from the place where they then resided near Monticello to a farm near Hanover, and "in the process of moving she [Evelyn] mislaid said papers and inadvertently failed to interpose an answer, in said action, and did not again recall such service" until the sheriff informed them that judgment had been entered and that an execution had issued thereon. Their motion to open the judgment and for leave to answer was made returnable and heard on July 11, 1942. The court denied the motion that day. Proposed verified answers

were interposed by each defendant, defendant William denying the averments of the complaint and alleging that "any services rendered by the plaintiff in the divorce action between this defendant and his wife was [were] rendered to the defendant Evelyn Mahler, and not to this answering defendant"; that in respect to the court's order of December 30, 1935, plaintiff has failed "to prosecute said right of action in said divorce action in which said order was made"; that there is a misjoinder of causes of action in this suit, the one predicated against defendant William not being the same cause upon which plaintiff predicates his right of action against Evelyn. He also pleads the statute of limitations as applicable to his defense.

The proposed answer of Evelyn is also a general denial. She avers further that she employed plaintiff April 9, 1935, but that her agreement with him was that he would "perform such services as [were] necessary" for $50, and that she paid him $25 to apply thereon. The remainder of her answer substantially conforms with the other allegations of William. An affidavit of merits was duly presented by each defendant. They state therein that they have truthfully and fully stated the facts to their attorney and have been advised that they have good and substantial defenses on the merits. Their attorney (Mr. Allison) averred that upon the "facts made to him by the above named defendants, he verily believes that said defendants have a good and substantial defense" to the action. There were no opposing affidavits or proof of any kind submitted in opposition to their claims. Nor was there here any substantial delay (May 12 to June 23) in seeking the relief afforded under our statute and decisions.

The allegations of the complaint and the proposed answers clearly show that there are important fact issues deserving of trial on the merits. To put the situation mildly, one may seriously doubt that the claimed causes of action could be thrown together in the fashion here sought. Obviously, as against Evelyn, the action is one founded on contract for the reasonable value of plaintiff's services to her. She claims that a fee of only $50 was to be paid for plaintiff's

services. In his complaint he asserts *as against her* that the reasonable value thereof was $125.

As to defendant William, there never was any contractual obligation assumed to pay plaintiff anything. All that can be said in respect to his liability is that in the divorce action provision was made whereby he was required to pay plaintiff a total sum of $125 for legal services there rendered. It was and remains a part of the divorce proceeding. Plaintiff does not claim that he was a party to that cause. He is at most but a third-party beneficiary. Upon that theory there never was any liability imposed ,upon Evelyn. So it is apparent that these defendants have rights to be protected by a trial on the merits. As already suggested, the only ·question is whether the court abused its discretionary authority in ·denying their motion.

Mindful of the facts recited, it strikes me that the following principles, as to which there is and can be no doubt, are important in ·our disposition of the case.

A judgment has been defined as "the final determination of the rights of the parties to an action"; "the sentence of the law pronounced by the court upon the matter contained in the record"; ·"the final determination and adjudication of a controversy or proceeding." 3 Dunnell, Dig. & Supp. § 4963, and cases under notes 77 and 78.

Our district courts are possessed of broad general jurisdiction; they are in fact "courts of superior jurisdiction." As such they are possessed of "inherent power to open their judgments and grant relief from default," and in that respect Minn. St. 1941, § 544.32 (Mason St. 1927, § 9283), which provides for the granting of the relief here sought by defendants, is but a limitation rather than a grant of power. 3 Dunnell, Dig. § 5010, and cases under notes 12 and 13.

By reason of the principles above stated, it is our generally accepted rule that courts' have been and are "naturally and very properly inclined to relieve a party from a default if he furnishes *any reasonable excuse* for his neglect and makes any fair showing

of merits." *Id.* & Supp. § 5013, and cases under note 41. "Indeed, *in such a case a default should ordinarily be opened as a matter of course, if it is apparent that the plaintiff has not been substantially prejudiced by a brief delay.*" (Italics supplied.) *Id.* and cases under note 42.

We had occasion in the recent case of Lentz v. Lutz, 215 Minn. 230, 232, 9 N. W. (2d) 505, 506, to examine anew the legal principles stated. We there said:

"We may well agree with defendant's assertion that courts are naturally, and very properly, inclined to relieve a party from default if he furnishes reasonable excuse for his neglect and makes a fair showing of a meritorious defense. Minn. St. 1941, § 544.32 (Mason St. 1927, § 9283), clearly indicates that purpose, and in the interests of justice it is proper that it should be liberally construed so that causes may be tried on the merits. 3 Dunnell, Dig. & Supp. § 5013, and cases under note 41."

Of course the district court has large discretionary powers in these cases, but it is a power of such a type "that no rules can be laid down for its government." Rather, the power "must be exercised judicially, with close regard to the facts of the particular case and in furtherance of justice. *It is ordinarily in furtherance of justice that an action should be tried on the merits.*" (Italics supplied.) 3 Dunnell, Dig. & Supp. § 5012, and cases under notes 33 and 34.

In the instant case there is no suggestion that plaintiff has suffered or will suffer harm by the granting of the relief defendants seek. There has been no unjustifiable delay. Only about five weeks after the entry of judgment and immediately upon discovery of its entry defendants proceeded to have it opened.

Defendants assign valid reasons for having overlooked the date of service, because Evelyn had mislaid the papers while they were busy moving from one farm to another. It is not an uncommon thing in such circumstances, applicable to farmers who have much to take care of while so engaged, especially during the spring and

early summer seasons when they are busy with crop planting, for an oversight such as this to occur. Furthermore, we have here a situation where there were no facts before the trial court opposed to those asserted by defendants. There has been no denial of their claims, directly or by inference. That there are genuine issues of fact to be determined obviously appears.

The majority opinion on this phase cites as authority for sustaining the trial court the case of Moot v. Searle, 165 Minn. 308, 206 N. W. 447. In that case, however, "service was made January 23, 1924; judgment was not entered until March 27, 1925, and this motion was made June 20, 1925." So it is apparent that nearly a year and a half had elapsed after the action was brought before the motion was heard. Significant, too, is this recital in the opinion, which I quote (165 Minn. 309, 206 N. W. 447):

"Action to recover compensation for personal services. Judgment was entered against defendant by default and he appeals from the order denying his motion to relieve him from the default, vacate the judgment and permit him to answer. *The affidavits against the motion indicate that defendant has had much experience as a defendant in civil cases, and as a result possesses much more information concerning the service of a summons than he admits in his own affidavits. The showing for plaintiff indicates that when this service was made upon defendant he knew perfectly well what was happening.*" (Italics supplied.)

The facts there clearly made a fact issue for the trial court to determine as to whether defendant had in fact acted with reasonable diligence in protecting his rights or had, through his own choice and inexcusable neglect, permitted an unreasonable length of time to elapse. (It is interesting to compare that case with our decision in Isensee Motors v. Rand, 196 Minn. 267, 264 N. W. 782.) Here there was no delay that can be said to be unreasonable in view of the circumstances. Furthermore, if delay is to be brought into the picture, what about plaintiff's alleged cause? Was it timely brought? If he has any rights against the husband, such

rights accrued at once when the divorce decree was entered on December 30, 1935. His present action was not brought until April 14, 1942, considerably more than six years later.

Since the trial court in granting applications of this type undoubtedly may impose reasonable terms, it seems to me we should reverse without suggesting any limitation as to terms or conditions that the trial court may, within its discretion, impose. We might with propriety say that the terms to be imposed should not "deprive" defendants "of any substantial right as claimed under the issues" of their proposed answers, "or terms which are burdensome," since this is a case "where there is no laches and the application is made within the year after entry of judgment." 3 Dunnell, Dig. § 5007a, and cases under note 8.

THOMAS GALLAGHER, JUSTICE (dissenting).

I concur in Mr. Justice Olson's dissent.

MR. CHIEF JUSTICE HENRY M. GALLAGHER took no part in the consideration or decision of this case.

