JOSEPH E. ALTENDORFER AND ANOTHER v. JANDRIC, INC.
VILLAGE OF INVER GROVE HEIGHTS,
THIRD-PARTY DEFENDANT.

199 N. W. 2d 812.

July 21, 1972—No. 43349.

*Thuet, Todd, Collins & Mitchell, John J. Todd,* and *Jack A. Mitchell,* for appellant.

*LeVander, Gillen, Miller & Magnuson* and *Harold LeVander, Jr.,* for respondent village.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

Per Curiam.

Defendant and third-party plaintiff, Jandric, Inc. (hereafter Jandric), appeals from summary judgment entered in favor of third-party defendant, Village of Inver Grove Heights (hereafter defendant municipality). We affirm.

The action in this case was commenced by plaintiff homeowners against Jandric, as the builder of their homes, alleging that Jandric negligently connected their homes to the local sanitary sewer system, resulting in a damaging backflow of sewage into their homes. The third-party action, which is the subject of this appeal, arose out of Jandric's claim for contribution or indemnity from the defendant mu-

nicipality, alleging that the sole cause of plaintiffs' damage was the municipality's alleged negligence in the maintenance and operation of the sewer system.

The sanitary sewer system now operated by defendant municipality was not constructed by the municipality but by Suburban Utilities, Inc. (hereafter Suburban), the stock of which was wholly owned by Jandric. Jandric had entered into an agreement in 1963 with the township of Inver Grove, predecessor to defendant village of Inver Grove Heights, pursuant to which it was agreed that Suburban would construct a sewer system and sewage disposal plant to serve residential and commercial properties which Jandric and its affiliates were constructing for sale. Jandric also agreed to donate all the assets of Suburban, including the completed sanitary sewer system, to the township in consideration of the township's agreement thereafter to operate the completed sewer system.

A second agreement was made in 1966 between Jandric and defendant municipality, to which Emil Jandric was a party as trustee of Jandric's stock in Suburban, by which the Suburban stock and the assets of Suburban were actually transferred to the municipality. Neither this 1966 agreement nor the 1963 agreement contained any provision by which the municipality agreed to assume liability for any negligence of Suburban in the construction of the sewer system.

Plaintiffs' homes were among those constructed by Jandric in 1964 and connected by Jandric to the Suburban-constructed sewer system.

Plaintiffs' complaint against Jandric alleges negligence in Jandric's *installation* of the sewer connections to their homes [1] and, seemingly, the *construction* of the sewer system,[2] thus a tort completed at the time

---

[1] The complaint in relevant part alleges:

"That in connection with the construction of said dwellings, defendant [Jandric, Inc.] did connect each said dwelling to a sanitary sewer system then owned by Suburban Utilities, Inc.

"That in so connecting each said dwelling to such sewer system, defendant was negligent and careless in the performance of said work and did fail to perform said work in a good and workmanlike manner."

[2] Certain interrogatories put to plaintiffs by defendant, together with their answers, were as follows: "1. Were any representations made to either of you in writing or orally regarding the sanitary sewer connection to your home, by an employee or representative of Jandric. * * *"

"1. Yes. Mr. McNulty and a former employee of a subcontractor for Jandric, Inc. by the name of Smith stated in effect that the sewers in question were improperly engineered and installed and that there was

their homes were built by Jandric. The third-party complaint of Jandric does not allege that the third-party defendant municipality assumed any liability for negligent construction of the Suburban system, but only that it was negligent in its subsequent *operation* of the completed sewer system,[3] which Jandric argues is a continuing tort for which the municipality should either indemnify Jandric or make contribution.

A municipality that constructs a sewer system itself may well be liable for its negligence in the construction of the system,[4] and a municipality that operates a sewer system may be liable for negligence in

---

discussion as to whether they could get away with the hookup or if they would have to install sump pumps. Also, it was stated that there was very little drainage from the house to the main line."

"3. State the location of the alleged act of negligence of the defendant. That is, do you claim the negligence occurred in the line from your home to your lot line or beyond the lot line."

"3. Failure to engineer the main line from the house to the street to fit the grade of the property and completion of an improper hookup at the street line. The hookup in the street is not at the proper grade also."

[3] The third-party complaint in relevant part alleges: "That the defendant and Third-Party Plaintiff Jandric, Inc. is entitled to recover from Third-Party Defendant Village of Inver Grove Heights, all or part of what the plaintiffs * * * may recover from the defendant Jandric, Inc. on the ground that any problems they may have, if any, are solely caused by the operation of the municipal portion of the sanitary sewage system and are not related to any work performed by the defendant Jandric, Inc.

"That the defendant and Third-Party Plaintiff Jandric, Inc. was not involved in any manner whatsoever in the installation of the sewer mains and laterals which service the residence of the plaintiffs, said items being installed by Suburban Utilities, Inc., a Minnesota corporation and presently being owned and operated by the Village of Inver Grove Heights Third-Party Defendant pursuant to agreement with said Suburban Utilities, Inc., and that if the plaintiffs are experiencing any problems in the operation of their sewage system said problems are caused solely by the negligence of the Third-Party Defendant Village of Inver Grove Heights in its operation of the sewer mains and laterals and said damage is not connected or attributable to any of the house connections installed by the defendant Jandric, Inc."

[4] Simmer v. City of St. Paul, 23 Minn. 408 (1877).

operation regardless of who first constructed and owned it.[5] A municipality that takes control of a privately constructed sewer system, however, may not be held liable for any negligence in the construction of that system,[6] absent an agreement to that effect. The granting of relief to Jandric encounters two major obstacles in these circumstances.

First, it is doubtful that the third-party complaint states an appropriate claim for indemnity or contribution under the principles stated in Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960). Although the negligence alleged in both the original complaint and the third-party complaint relate to the same damaging result, they are otherwise wholly different in nature. If plaintiffs were to recover from Jandric on their claim of negligence in installation or construction, it would be because of that negligence and not because of any breach of duty, contractual or otherwise, owed Jandric by the municipality or a demonstrably greater liability of the municipality for which equity would provide indemnification. Similarly, the third-party complaint does not allege a common liability for concurring negligence, a requisite for shared responsibility by contribution. The third-party complaint is instead an attempt by Jandric to offer to plaintiffs a different tortfeasor who Jandric alleges is solely responsible—which, as stated in Hetland & Adamson, 1 Minnesota Practice, Authors' Comments, p. 507, is an impermissible use of the third-party action under Rule 14, Rules of Civil Procedure.

Second, and the basis upon which the trial court granted summary judgment, the defendant municipality was not notified of a tort claim against it as required by Minn. St. 466.05. The original plaintiffs proceeded against a private party and accordingly had no occasion to give notice to the municipality. The third-party plaintiff, although claiming against the municipality, likewise did not, and could not, give notice within the required 30 days after the completed tort alleged by plaintiffs, precisely the situation which dictated dismissal of a third-party complaint for contribution or indemnity in Hansen v. D. M. & I. R. Ry. Co. 292 Minn. 503, 195 N. W. 2d 814 (1972).[7] See, also, American Auto.

---

[5] Pettinger v. Village of Winnebago, 239 Minn. 156, 58 N. W. 2d 325 (1953); Taylor v. City of Austin, 32 Minn. 247, 20 N. W. 157 (1884).

[6] Cf. City of New Castle v. Smith-Jackson Co. 87 Ind. App. 418, 161 N. E. 692 (1928).

[7] In Hansen v. D. M. & I. R. Ry. Co. 292 Minn. 503, 195 N. W. 2d 814 (1972), the third-party plaintiff did give notice to the third-party defendant municipality within 30 days after commencement of the original action. Third-party plaintiff in the instant case did not give even

Ins. Co. v. City of Minneapolis, 259 Minn. 294, 107 N. W. 2d 320 (1961).

Jandric contends, however, that the notice statute, at least in its application to this third-party action for indemnity or contribution, unconstitutionally deprives it of due process or equal protection of the law. The sole authority cited for this proposition is Grubaugh v. City of St. Johns, 384 Mich. 165, 180 N. W. 2d 778 (1970), the actual holding of which is neither controlling nor altogether clear.[8]

Grubaugh was a first-party action by an injured minor against a municipality for injuries sustained as a passenger in an automobile which went out of control because of the allegedly defective condition of the municipal street. Notice of claim against the defendant municipality was given approximately 4 months after expiration of the statutory time (and his action was commenced almost 2 years after the injury-producing event). Plaintiff, in defending against the motion to dismiss, claimed impossibility of compliance with the statutory notice requirement because he was incapacitated by the injury and, in addition, asserted that the defendant municipality had actual notice of all the facts and circumstances from the police investigation at the time of the accident. Plaintiff contended that the notice provisions of the statute and

---

such notice, relying upon the prompt commencement of the third-party action as sufficient compliance. We need not, however, determine whether the commencement of an action may itself satisfy the statutory notice requirement inasmuch as even such notice would have been untimely in the absence of a continuing tort.

[8] Jandric's contention, except for this citation of authority, is best stated in its own briefed words: "* * * It is the position of the Appellant that the Minnesota court should take a look at our Notice Statute with reference to the constitutionality thereof as applied to particular facts and circumstances of this case and particularly with reference to questions generally arising in actions whereby reason of particular facts and circumstances discovery processes in the original litigation indicates that a Municipality should be joined as a Third-Party defendant to determine the issue of contribution by the Municipality.

"It is the position of the Appellant that such a holding by this court would not defeat the general purpose of Notice Statutes namely that the municipal authorities have sufficient notice of the claim so as to be able to properly investigate the matter and determine the responsibility of the Municipality, if any. As Third-Party defendants they would have access to original pleadings, would be able to examine previous discovery processes in the original litigation and conduct such discovery as would be necessary to complete their investigation and not be placed in jeopardy as to their rights."

municipal charter, as related to minors and other persons under physical, mental, or other disability, were violative of the due process and equal protection clauses of the State and Federal Constitutions. It is the disposition of this issue which is unclear.

The writer of the opinion, joined by only two others of the six justices sitting, acknowledged that precise question as the "primary issue" (384 Mich. 167, 180 N. W. 2d 779) but proceeded to consider at length, as the "basic constitutional question," whether "the statutory requirement of written notice, as a condition of holding a governmental unit or agency liable for tort, is violative of the concepts of due process and equal protection of the law." (384 Mich. 169, 180 N. W. 2d 781). He and his two concurring colleagues concluded that the statute did not merely declare the state's consent to be sued but was an express assumption of liability by the state that created a substantive right, placing municipalities upon the same legal footing as any other negligent tortfeasor, so that the imposition of different limitations upon such substantive rights in the case of the state constituted a capricious and arbitrary exercise of legislative power and a denial of due process. This was the concluding language of the court (384 Mich. 176, 180 N. W. 2d 784):

"We hold that the notice provisions * * * of the general highway statute are constitutionally void as depriving claimant of due process of law.

"Since we dispose of this case on the basis of this plaintiff's right to due process, we do not discuss the briefed argument that the 60-day notice requirement in every case violates the equal protection clauses of the state and Federal Constitutions. Such question will undoubtedly arise in some new case where a fully competent adult is the victim."

Two justices concurred only in the result, presumably because of the more limited concluding paragraph. Mr. Chief Justice Brennan, dissenting, noted that the first quoted paragraph of the *holding* was "not premised upon plaintiff's incapacity" and in effect was an unprecedented challenge to the statute, applying "with equal force to competent adults as to minors or those suffering legal disability or physical incapacity whether caused by the negligence of the City or otherwise," 384 Mich. 182, 183, 180 N. W. 2d 787, whereas the delay in notice seemingly could have been excused under the terms of the statute itself.

The Grubaugh case, in any event, is inconsistent with our own opinions expressed in such cases as Hirth v. Village of Long Prairie, 274 Minn. 76, 143 N. W. 2d 205 (1966); Freeman v. City of Minneapolis, 219 Minn. 202, 17 N. W. 2d 364 (1945); and Frasch v. City of New Ulm, 130

Minn. 41, 153 N. W. 121, L. R. A. 1915E, 749 (1915). Although the constitutional issue was not squarely raised in Hirth and Freeman, it was the decided issue in Frasch, which involved a plaintiff claiming municipal liability for contaminated water furnished by the municipal waterworks. There the court held (130 Minn. 43, 153 N. W. 122, L. R. A. 1915E, 750):

"* * * [T]he legislature is not, because of similarity of liability, precluded from making distinctions between municipalities and private corporations in respect to conditions precedent to suit."

In Freeman, this court said (219 Minn. 205, 17 N. W. 2d 365):

"* * * It is not for the courts to pass upon the merits, wisdom, or justice of legislation. * * * There can be no doubt that the legislature acted within its constitutional powers in enacting the statute here involved."

Any reliance upon Grubaugh, therefore, may confront us with a challenge to the whole of our notice statute, a confrontation which in the circumstances of this case we are disposed to defer, again recommending to the legislature its renewed consideration of the several situations in which the statute seemingly produces harsh results. Unlike an issue of purely statutory construction, judicial resolution of which becomes engrafted upon the statute by subsequent inaction of the legislature, the issue of the constitutionality of a statute is not so circumscribed. We are not persuaded, however, for reasons previously considered in regard to this third-party action, that this is an appropriate case to determine the more limited constitutional issues posed by Jandric's third-party complaint. Although a challenge to the constitutional validity solely of a particular application of a statute may not require the prior notification to the attorney general pursuant to Rule 24.04, Rules of Civil Procedure, and Rule 144, Rules of Civil Appellate Procedure (which was not done in this case), we think that the full statutory context in which Jandric raises the constitutional issue warrants affording the attorney general an opportunity to intervene in defense.

Affirmed.

Mr. Justice Todd took no part in the consideration or decision of this case.

Mr. Justice MacLaughlin, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.