Perry J. SHORTRIDGE, et al.,
Respondents,

v.

John E. DAUBNEY, Defendant and Third Party Plaintiff, Respondent,

v.

CITY OF MAPLEWOOD, Defendant and Third Party Defendant, Appellant.

Nos. C1–86–1428, CX–86–1430.

Court of Appeals of Minnesota.

Feb. 24, 1987.
Review Granted April 17, 1987.

Daniel B. O'Leary, Richard J. Gabriel, Mansur, O'Leary & Gabriel, St. Paul, for Perry J. Shortridge, et al.

John D. Hirte, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for John E. Daubney, Defendant and Third Party Plaintiff.

John F. Bannigan, Jr., Bannigan & Kelly, P.A., St. Paul, for City of Maplewood, Defendant and Third Party Defendant.

Heard, considered, and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

In 1986, respondents brought a summary judgment motion challenging the validity of a notice of hearing issued by the City of Maplewood prior to a special assessment hearing held in 1981. The trial court determined that the city's notice of hearing was defective because it erroneously stated that appeals from the assessment must be brought within twenty (20) days after the adoption of the assessment rather than the thirty (30) days allowed under the statute. The court ruled that the defective notice deprived the city of jurisdiction to levy the assessment and that laches did not bar the challenge to the notice. The city appeals. We affirm.

## FACTS

In 1981, Robert Berglund and Perry Shortridge owned Beaver Lake Estates, a mobile home park bordering on Maryland Avenue in Maplewood. During 1980 and 1981, the City of Maplewood made several public improvements along Maryland Avenue, including installing new water and sewer lines and making street repairs. The improvements were identified as Project No. 77–12. The city intended to apportion the cost of the improvements among the benefited properties and held a special assessment hearing for that purpose on July 30, 1981.

The city mailed a notice of hearing to those property owners affected by the assessment. The notice was also published in a local newspaper. Berglund and Shortridge received their notice and were assessed approximately $209,000. The notice stated that the adoption of the assessment for this project would be heard at 7:45 p.m. on July 30, 1981. The notice also contained a paragraph advising them that an owner could appeal an assessment pursuant to Minn.Stat. § 429.081 by serving notice of an appeal on the mayor or city clerk within 20 days after the adoption of the assessment. That statutory section, however, was amended in 1978 to allow 30 days within which to serve a notice of appeal. The city had failed to correct its notice forms to reflect the change in the statute.

On the day of the hearing, Berglund contacted John Daubney, an attorney, to discuss the assessment, which Berglund thought excessive. They agreed to meet before the 7:45 p.m. assessment hearing for Project 77–12. This project was the fourth of five assessment hearings scheduled that evening. The meeting began at approximately 7:00 p.m. with the call to order. After the call to order and roll call, but before the first assessment hearing, Maplewood's City Attorney announced the error in the notices and stated the correct appeal period was 30 days. Neither Berglund nor Daubney heard the announcement. The city's tape recording machine was not turned on at the time, and the

minutes from the meeting do not mention the correction.

When Project No. 77–12 was eventually discussed, Berglund objected to his assessment and was told to fill out a request form. With Daubney's assistance, Berglund completed the required form in which he objected to his assessment, and he filed it with the city before leaving the hearing. The request form did not constitute a formal appeal. The city council adopted the assessment later that evening. The next day, Berglund mailed Daubney additional information concerning the assessment. Both Berglund and Shortridge believed Daubney was representing them in their appeal. Daubney, however, never filed an appeal.

In 1984, Berglund and Shortridge sued Daubney for malpractice for his failure to perfect an appeal. During discovery, the error in the notice of hearing was revealed. Daubney then impleaded the city in order to challenge the validity of the notice. Berglund and Shortridge amended their complaint, directly challenging the city's notice as defective. Berglund, Shortridge, and Daubney then moved for summary judgment on the adequacy of the notice. The trial court ruled that the notice did not strictly comply with the statutory notice provision and that the improper notice deprived the city of jurisdiction to levy the assessment. It further held that laches did not bar the challenge to the notice.

## ISSUES

1. Did the trial court err in finding that the notice of hearing was defective?

2. Did the trial court err in finding that laches did not bar the challenge to the notice?

## ANALYSIS

■ 1. Minnesota Statutes Section 429.061, subdivision 1 (1980) required notice of special assessment hearings to state that a landowner has a right to appeal an assessment and to state the time in which such an appeal must be taken. *Klapmeier v. Town of Center of Crow Wing County,* 346 N.W.2d 133, 136 (Minn.1984). The statute provided:

> The notice shall also state that an owner may appeal an assessment to district court pursuant to section 429.081 by serving notice of the appeal upon the mayor or clerk of the municipality within 30 days after the adoption of the assessment and filing such notice with the district court within ten days after service upon the mayor or clerk.

Minn.Stat. § 429.061, subd. 1. Proper notice of assessment proceedings is a jurisdictional prerequisite to any action by the city. *Klapmeier,* 346 N.W.2d at 136 (citing *Sewall v. City of St. Paul,* 20 Minn. 511 (Gil.459) (1874)). There must be strict compliance with the statutory notice provisions. *Id.* (citing *Great Northern Railway Co. v. City of Minneapolis,* 136 Minn. 1, 161 N.W. 231 (1917)).

In *Klapmeier,* the supreme court considered a challenge to a notice of hearing published and mailed pursuant to Minn. Stat. § 429.061, subd. 1. The notice, however, failed to mention that property owners had any appeal rights whatsoever. The court held:

> [T]he failure to mention appeal rights in the published and allegedly mailed notice rendered that notice defective and the board without jurisdiction to make the reassessment.

*Id.* Here, the city's notice of hearing erroneously stated the time in which an appeal must be taken. Respondents argue that the notice failed to strictly comply with the statutory notice provision, rendering the city without jurisdiction to levy the assessment. *Id.*

The city argues that substantial compliance satisfies the notice requirement and relies on *City of Minneapolis v. Wurtele,* 291 N.W.2d 386 (Minn.1980), to support its position. *Wurtele* involved a condemnation proceeding in which notice was issued pursuant to Minn.Stat. § 472A.03 which provided:

> A municipality may * * * after public hearings, notice of which shall have been

published in the official newspaper of the municipality, * * * designate development districts * * *.

Minn.Stat. § 472A.03 (1978). The notice was challenged as inadequate and insufficient to satisfy the statutory requirement. The court dismissed the challenge, stating:

[W]here a statute requiring notice does not set further guidelines for the form that notice must take, the statute has been satisfied where the notice is "sufficient to apprise one of ordinary intelligence" of the nature and subject of the hearing.

*Wurtele*, 291 N.W.2d at 392 (citation omitted).

The statute before us is significantly different from the one before the court in *Wurtele*. Here, the statute unequivocally sets the guidelines for the form the notice must take. Among other things, the statute specifically requires the notice to state that an owner has 30 days to appeal an assessment. The 30–day appeal period is granted under Minn.Stat. § 429.081. This section is always invoked by municipalities in cases where owners have failed to appeal in a timely manner. In *Wessen v. Village of Deephaven*, 284 Minn. 296, 170 N.W.2d 126 (1969), for example, the Village of Deephaven adopted an assessment from which several property owners filed timely notices of appeal. The village subsequently determined there had been an error in the publication of the original assessment and it adopted a reassessment. The owners then mailed their notices of appeal to the attorneys for the city and also delivered their notices to the sheriff for service on the mayor. These actions were taken within the 20–day appeal period then in effect. The mayor, however, was not served with the notices of appeal until the twenty-second day after the adoption of the reassessment. The supreme court affirmed the district court's dismissal of the property owners' suit against the village, stating:

[I]t must be kept in mind that appeals by property owners from assessments are wholly statutory, there being no common-law right to such appeal, and that

*the conditions imposed by the statute must be strictly complied with.* The conditions will not be extended by construction.

*Id.* at 298, 170 N.W.2d at 128 (citation omitted) (emphasis added).

█ Strict compliance is the rule governing appeals from assessments. *Id.; Ewert v. City of Winthrop*, 278 N.W.2d 545, 550 (Minn.1979); *Village of Edina v. Joseph*, 264 Minn. 84, 93, 119 N.W.2d 809, 816 (1962). Historically, many homeowners have suffered from the harshness of this rule. Strict compliance, however, is a sword cutting two ways. Just as property owners must strictly adhere to the requirements imposed by the statute, so must local authorities strictly adhere to the statutory notice requirements. There cannot be two standards, a rigid one for homeowners, but a flexible one for cities. The city cannot have it both ways.

█ On appeal, the function of a court reviewing a summary judgment is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). None of the parties disputes the error in the notice of hearing, and nothing persuades us that the trial court erred in applying the rule in *Klapmeier*: "There must be strict compliance with statutory notice provisions." *Klapmeier*, 346 N.W.2d at 136. Substantial compliance is inapplicable in assessment proceedings where notice is issued under Minn.Stat. § 429.061, subd. 1.

The dissent calls our attention to the cases of *SMB Investments v. Iowa-Illinois Gas & Electric Co.*, 329 N.W.2d 635 (Ia. 1983), and *Habel v. City of Chisago City*, 346 N.W.2d 668 (Minn.Ct.App.1984), to support its argument that strict compliance is not equivalent to literal compliance. *SMB Investments*, however, is an Iowa case which involves a condemnation proceeding, not a special assessment proceeding. We note that Iowa, like Minnesota, adheres to the principle of strict compliance in proceedings involving special assessments.

*Green v. City of Cascade,* 231 N.W.2d 882, 885 (Ia.1975).

We also believe *Habel* is inapplicable here. In *Habel,* a notice of hearing in an assessment proceeding was challenged as defective for failing to inform property owners of any deferment procedures established by the city as required by Minn.Stat. § 429.061, subd. 1. Because the city had not established any deferment procedures, this court reasoned that it would be absurd to require notice of deferments and procedures which did not exist. *Habel,* 346 N.W.2d at 671. While deferments are optional and need to be included in a notice of hearing only when they have been established, the notice of a 30–day appeal period is mandatory.

■ The city claims that it will lose over $900,000 if the assessment is invalidated. There is simply no evidence, however, supporting this naked allegation. Furthermore, unlike homeowners, the city has a remedy available. The city may proceed upon notice and hearing to reassess the properties. Minn.Stat. § 429.071, subd. 2 (1986). The basis for a special assessment is the enhanced market value of the benefited land. *See Continental Sales & Equipment Co. v. Town of Stuntz,* 257 N.W.2d 546, 549 (Minn.1977). Five years have passed since the original assessment. When the city reassesses, it should have little difficulty determining what increase, if any, there has been in the market value of the benefited land. The reassessment would not affect the assessments that have already been paid. Credit can be given for payments received; refunds can be given if the property has been overassessed and the payments made exceed the amount of the reassessment.

■ Because this action began as a malpractice claim by Berglund and Shortridge against Daubney, the city argues that the challenge to the notice of hearing is collateral to the primary cause of action and cannot be maintained except as a direct attack in an assessment proceeding. Berglund and Shortridge, however, amended their complaint and directly challenged the city's notice as defective. Although their challenge was brought beyond the 30–day appeal period provided by statute, it was, nevertheless, a direct attack on the assessment. A property owner's appeal rights are exclusive "except as to the claim of a want of power or jurisdiction of the city to make the improvement or assessment." *Freding v. City of Minneapolis,* 177 Minn. 122, 123–24, 224 N.W. 845, 846 (1929). Even if the challenge were collateral, a property owner may collaterally attack a special assessment for a want of jurisdiction. *Burlington Northern, Inc. v. City of McCook,* 204 Neb. 543, 544, 283 N.W.2d 380, 381 (1979).

■ 2. The trial court ruled that laches did not bar the challenge to the notice of hearing. The purpose of laches is to prevent one who has not been diligent in asserting a known right from recovery at the expense of one who has been prejudiced by the delay. *Aronovitch v. Levy,* 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). The question, however, is not whether laches does or does not bar the action. Laches is simply not a defense in situations where, as here, the assessment was levied without legal authority. 14 McQuillin *Municipal Corporations,* § 38.191 (3d ed. 1987). In *Klapmeier,* although the supreme court held that the city lacked jurisdiction to levy the assessment, the court went on to discuss laches. It need not have done so, and the discussion is dicta.

Where an assessment is void, the lapse of time cannot give it life or validity. Laches does not apply where the city lacks jurisdiction to act from the beginning. *See Cullingham v. City of Omaha,* 143 Neb. 744, 748, 10 N.W.2d 615, 618 (1943). Although the trial court erred in considering laches as a defense, its error does not change the result.

## DECISION

The trial court correctly determined that the city's notice of hearing was defective for failing to strictly comply with the statutory notice provision, which rendered the

city without jurisdiction to levy the assessment.

Affirmed.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent. I do not believe that the city was without jurisdiction to levy the assessment, nor do I believe that the assessment can be collaterally attacked in this manner. I would therefore reverse the trial court's grant of summary judgment and remand for further proceedings on the malpractice action.

1. The majority's interpretation of the doctrine of strict compliance is too simplistic and ignores the intent of the statute and the peculiar facts of this case. I do not believe that a mere informality or an immaterial defect should vitiate a notice where the error is not misleading and the notice gives the necessary information. Strict compliance is not equivalent to literal compliance and does not require a literal and blind adhesion to mere words. *See SMB Investments v. Iowa-Illinois Gas & Electric Co.*, 329 N.W.2d 635, 637 (Iowa 1983) ("[w]hile statutory provisions regulating the exercise of eminent domain must be strictly complied with * * *, this does not necessarily mean literal compliance with the notice statute is required; substantial conformity is sufficient") (citations omitted). Strict compliance merely requires that the conditions imposed by a statute "will not be *extended* by construction." *Wessen v. Village of Deephaven*, 284 Minn. 296, 298, 170 N.W.2d 126, 128 (1969) (emphasis added); *Village of Edina v. Joseph*, 264 Minn. 84, 94, 119 N.W.2d 809, 816 (1962) (emphasis added). *See Ewert v. City of Winthrop*, 278 N.W.2d 545, 550 (Minn. 1979) (assessment statute cannot be extended to include right to a jury trial when no such right is explicitly granted by the statute). In this case, the city does not seek to *extend* the statutory appeal period. It merely requests that this court look beyond the literal terms of the notice and recognize that it contains a technical and minor error which prejudiced no one.

In *Habel v. City of Chisago City*, 346 N.W.2d 668 (Minn.Ct.App.1984), a municipality's failure to comply with the literal provisions of Minn.Stat. § 429.061, subd. 1 (1982) did not automatically render its notice of an assessment hearing defective. The property owners had asserted that the language in the notice was misleading because its provisions were not presented exactly in the same order as the statute. This court disagreed and in an opinion written by Chief Judge Popovich concluded that the notice was not deficient for that reason.

The property owners in *Habel* had also asserted that the notice was defective because it failed to inform them of deferments available to retired or disabled persons, as mandated by Minn.Stat. § 429.061, which provides in pertinent part:

The notice *shall* inform property owners of the provisions of sections 435.193 to 435.195 and the existence of any deferment procedure established pursuant thereto in the municipality.

Minn.Stat. § 429.061, subd. 1 (1982) (emphasis added). We again refused to find the notice defective because:

We believe the deferment portion of Minn.Stat. § 429.061, subd. 1 can be reasonably read as requiring information of the deferment statutes and of their procedures only if the municipality has established a deferment policy. To require notice of deferment and procedures when these optional deferments have not been established by the municipality would be absurd, in contravention of the well settled rule that the legislature does not intend an absurd result. Minn.Stat. § 645.17(1) (1982). Moreover, the appellants have not been prejudiced in any way by the failure of the notice to include the deferment options since they were not eligible for a deferment even if the City had established a deferment ordinance.

*Habel*, 346 N.W.2d at 671. In so doing, we looked beyond the literal language of the statute and the notice.

Similar to the property owners in *Habel,* the landowners in this case have not been prejudiced or misled by the language in the city's notice providing for 20 days within which to appeal instead of 30 days. The majority conveniently downplays several important and undisputed facts. One is the language of the notice itself, which makes specific reference to the section of the statute providing the 30–day appeal period:

> An owner may appeal an assessment to District Court pursuant to M.S.A. *Section 429.081* by serving notice of the appeal upon the Mayor or City Clerk of the City of Maplewood within twenty (20) days after the adoption of the assessment and by filing such notice with the District Court within ten (10) days after service upon the Mayor or City Clerk.

(Emphasis added).

In addition, the city attorney announced at the beginning of the hearing that the notices contained an error and that the correct appeal period was 30 days, not 20 days. While neither the landowners nor Daubney were present when this announcement was made, one of the landowners admitted during a deposition that another citizen had informed him that he had 30 days to file an appeal. Daubney also acknowledged during a deposition that at the time of the hearing he knew that the appeal period was 30 days. The landowners and Daubney thus had actual knowledge that the appeal period was 30 days.

Based upon these facts, it cannot be said that the notice was misleading or in any way prejudicial. Because I believe that the notice was not defective and was in strict compliance with the statute, I conclude that the city had jurisdiction to levy the assessment. The position of the majority is based upon a hyper-technical objection lacking in substance.

2. Even if the city was without jurisdiction to levy the assessment, I also disagree with the majority's conclusion that the city cannot assert laches as a defense. Although the supreme court in *Klapmeier* similarly determined that a reassessment had been levied without legal authority, it nevertheless went on to address the issues of laches and waiver. *Klapmeier,* 346 N.W.2d at 136–37. *Klapmeier* thus suggests that waiver and laches are available defenses when an assessment is challenged, even if the assessment was levied without jurisdiction.

The purpose of laches is "to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Aronovitch v. Levy,* 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953) (quoted by *Klapmeier,* 346 N.W.2d at 137). In this case, the landowners and Daubney admit that they knew an appeal had to be taken from the assessment within 30 days. The landowners claim that they assumed Daubney was representing them in an appeal. They nevertheless waited over four years to sue Daubney for malpractice and to collaterally challenge the validity of the assessment in an amended complaint.

The city claims that the prejudice it will suffer should the assessment be invalidated renders the landowners' delay unreasonable. According to an affidavit filed by the city clerk, if the assessment is invalidated the city will suffer financially and lose approximately $916,000 on its levy of $2.4 million from all five projects assessed at the hearing in July 1981. The city also claims that if required to conduct a reassessment proceeding, it will suffer a considerable financial and administrative burden. Given this, I believe that the landowners' delay in challenging the assessment prejudiced the city, was unreasonable, and makes the relief sought by the landowners inequitable.

Although not discussed by the trial court, the city also raised the defense of waiver in its original answer and its answer to the landowners' amended complaint. In *Klapmeier,* the supreme court addressed a waiver argument and concluded:

> [A] clear showing of waiver of notice requires an [overt] act which is inconsistent with subsequent assertion of the right to notice, coupled with knowledge of that right.

*Klapmeier,* 346 N.W.2d at 137. Here, one of the landowners attended the hearing and filed his objection to the assessment. He also knew, as did Daubney, that he had 30 days to appeal from the assessment. Indeed, about ten days after the hearing, one of the landowners telephoned Daubney to check on the status of his appeal. Daubney apparently did not believe that an appeal would be successful or warranted, and allowed the 30-day period to run. Under these facts, it is clear that the landowners knew of their right to appeal, but failed to exercise it. I therefore believe that they have waived any right to object to an error in the notice.

3. Finally, I do not agree that the assessment in this case can be collaterally attacked. I disagree with the majority's conclusion that this collateral attack was proper because the city was without jurisdiction to levy the assessment. The procedural irregularities of this case essentially allowed this collateral attack to be maintained.

This action began as a malpractice claim by the landowners against Daubney. After some discovery, Daubney sought to amend his answer to include a collateral challenge to the validity of the assessment as a defense. In its order granting that amendment, the trial court suggested that the city be brought in as a third-party defendant. Daubney therefore impleaded the city and the landowners were persuaded to amend their complaint to include a claim against the city.

Joinder of the city under these circumstances, however, constituted an impermissible use of the third-party action under Minn.R.Civ.P. 14.01. A defendant may institute a third-party action against a person who is or may be liable to him for all or part of the plaintiff's claims. The rule does not permit a defendant to identify an additional party who may be liable to the plaintiff. *See* D. Herr & R. Haydock, 1 *Minnesota Practice* § 14.4, at 323 (1985); *Altendorfer v. Jandric, Inc.,* 294 Minn. 475, 478, 199 N.W.2d 812, 814–15 (1972) (third-party complaint which merely offers to the

plaintiffs a different tortfeasor who the defendant alleges is solely responsible for the plaintiffs' injuries is an impermissible use of the third-party practice under Rule 14).

The question of whether there has been a misjoinder of parties cannot be raised for the first time on appeal. *See Whipple v. Mahler,* 215 Minn. 578, 580, 10 N.W.2d 771, 773 (1943) (misjoinder of causes must be raised by answer or demurrer and cannot be raised for the first time on appeal). The city, however, did assert in its answer to Daubney's third-party complaint that the complaint should be dismissed because Daubney lacked standing to challenge the validity of the assessment. Clearly, Daubney has no standing. He is not an aggrieved party under Minn.Stat. § 429.081, and he is not an owner of property affected by the assessment. Accordingly, his third-party complaint against the city should have been dismissed.

After joining the city, Daubney filed a motion for summary judgment, seeking an adjudication that the assessment was invalid and a dismissal with prejudice of the landowners' malpractice claims. Again, the city argued that Daubney lacked standing to challenge the assessment. The trial court ignored this objection, reasoning that it was "moot" because the landowners had joined in the motion and had standing. The record, however, does not contain any motion papers from the landowners or any other indication that they actually joined in Daubney's summary judgment motion. Even assuming that the trial court could properly grant summary judgment to a party without the filing of a motion, it was clearly improper to grant summary judgment to Daubney, who had no standing to contest the adequacy of the notice. *See Hughes v. Patrick & Associates,* 300 Minn. 387, 391–92, 220 N.W.2d 347, 350 (1974).

Finally, I do not believe that it was proper for the trial court to dismiss with prejudice the landowners' malpractice claim against Daubney based on its grant of summary judgment. Although the land-

owners only challenge this dismissal should the grant of summary judgment against the city be reversed,[1] they fail to recognize that the malpractice claim and the challenge to the assessment itself are entirely separate claims with potentially different damages. Unless they expressly stipulate to dismissal of the malpractice claim, I would reinstate it and proceed on that theory.

1. Notices of appeal in this case were filed by both the city and by the landowners. The city's notice of appeal challenges the grant of summary judgment declaring its assessment notice invalid (C1–86–1428); the landowners' seeks reinstatement of their malpractice claim only if the city is successful in its appeal (CX–86–1430). Prior to oral arguments, these appeals were consolidated by this court on its own motion.