IN RE VALIDITY OF SPECIAL ASSESSMENT BY CITY OF MOORHEAD.
ALEX J. NEMZEK v. CLAY COUNTY.[1]

May 22, 1953.

No. 35,982.

---

[1]Reported in 58 N. W. (2d) 746.

*Vance N. Thysell,* County Attorney, for appellant.
*G. L. Dosland,* for respondent.

CHRISTIANSON, JUSTICE.

Petition to the district court by Alex J. Nemzek to determine the validity of a special assessment levied against his property by the city of Moorhead, Clay county, Minnesota, for the extension of water mains. The district court found that the special assessment was void. Clay county appeals from an order denying its motion for amended findings or for a new trial. We review only that part of the order which denies the motion for a new trial since that part of the order which denies the motion for amended findings is not appealable.[2]

In August 1950, the city council of Moorhead passed an ordinance extending the city's special assessment procedure to cover the laying and maintaining of water mains. Subsequent to this, petitioner, Alex J. Nemzek, requested an extension of the city's water mains into Nemzek's third addition. He was told that the public service commission would no longer install water mains unless a petition was signed for it in compliance with the above ordinance. Nemzek then signed a petition which contained a request for the extension of the water mains into the addition, a pledge to pay the special assessment therefor, and a warrant that he was the sole owner of Nemzek's third addition. At the time he signed the petition, Nemzek qualified it by informing the city clerk that he had sold several lots in the addition, that this ordinance was invalid, and that he would not pay any special assessments. The city council considered the petition and approved the extension without notice or hearing. The water mains were extended and the benefited property assessed. Nemzek instituted the present proceedings to determine the validity of the assessment.

---

[2]See cases collected in 1 Dunnell, Dig. (3 ed.) § 309, note 25.

■ The trial court held that the ordinance insofar as it purported to regulate the operation, extension, and maintenance of water mains was wholly invalid and void. It relied on Charter of City of Moorhead, § 94, which provides:

### "By-Laws, Rules

"\* \* \* Said board [public service commission] shall fix and maintain the rents and rates for power, water, light and such other facilities or plants as may be under its control so that income from such services of the City shall, in each fiscal year, be at least sufficient to defray the cost of the operation, maintenance and extension of such public services and to pay the interest on all bonds of the City, designated under this charter, which have been issued on account of the construction of such public services and to maintain a sinking fund of five per cent or more of the amount of any bonds outstanding issued for each such public service."

It construed this section to provide that all extensions of water mains must be paid out of the operating revenues of the public service commission and concluded, therefore, that the city had no power to levy special assessments for the extensions of water mains.

Appellant contends that this section does not contain an express or implied limitation on the power of the city to levy special assessments for local improvements but only insures that the city's public utilities system as a whole will be self-supporting and not dependent on the general revenues of the city. Appellant's argument is supported by other relevant sections of the charter which provide as follows:

### "Power Of City

"Sec. 90. The City may construct or purchase its water and electric light and power plant, or either of them, and dispose of the same at will. The City may maintain, enlarge, *extend*, repair and operate the same. \* \* \* " (Italics supplied.)

### "Power To Make Improvements And Levy Assessments

"SEC. 141. The City of Moorhead shall have the power to make any and every type of improvement not forbidden by the laws of

the state, and *to levy special assessments* for all such as are of a local character. * * *" (Italics supplied.)

### "Funds

"SEC. 85. * * *

* * * * *

"There shall be paid into this fund [permanent improvement fund] all moneys received from the sale of any permanent improvements or property of the City, the proceeds whereof are not otherwise disposed of under this charter, and also such amounts as may from time to time be realized from the sale of bonds issued on account of this fund, and the principal sum of all excess of *assessments for water mains and sewers.* * * *

* * * * *

"The water and light fund is created to provide for the support and maintenance of any plant owned or operated by the City for furnishing to the City or its inhabitants water and light, and of paying the cost of the purchase, construction, extension, operation, maintenance and repair of the City water and light plant, and the interest on all bonds and outstanding obligations issued on account of said water and light plant.

"This fund shall not be maintained by taxation, but there shall be paid into it all moneys derived from the sale of any property acquired for or used in connection with the water and light plants of the City; *also the proceeds of all special assessments levied on account of or in connection with such plants; * * *.*" (Italics supplied.)

When § 94 is read in conjunction with §§ 90 and 141, it seems clear that § 94 was not intended to limit the power of the city to levy special assessments for local improvements. In fact, § 85 expressly contemplates special assessments in connection with the installation of water mains. In our opinion appellant's construction of the charter is the more reasonable and correct one. Therefore, we hold that the trial court erred in determining that the city of Moorhead does not have the power to levy special assessments for the extension of water mains.

■ In concluding that the city council does not have the power to levy special assessments for the extension of water mains, the trial court also relied on § 99 of the city charter, which provides:

## "Extension Of Service

"Extensions of the water pipes of the City and of electric light lines shall not be made except when ordered by said board [public service commission] and approved by the council."

However, in our opinion, this section is not a limitation on the powers of the city council except insofar as it requires an order of the public service commission as a condition precedent to action by the council. The trial court found that there was no such order. Respondent did not allege in his petition that the city council acted without an order of the public service commission nor did he introduce evidence that the city council acted without an order of the public service commission. Therefore, the trial court's finding that the city council acted without any order from the public service commission is without basis in the record.

■ The trial court found that the due process provisions of the ordinance in question were not complied with by the city council. Section 1 of the ordinance provides in part as follows:

"* * * and the Council may, upon a petition for an improvement signed by 100 per cent of the owners of real property abutting on the proposed improvement, proceed with the improvement, without the publication of a notice and the holding of a hearing; where the petition has more than 50 per cent of the real property signed for and less than 100 per cent, the Council shall thereupon instruct the City Clerk to secure a complete list of the property owners, and publish a notice of hearing in the official newspaper at least once each week for two successive weeks, stating the kind of improvement proposed, that the council will hear objection, if any, to the improvement in the Council Chambers in the City Hall at a time and date to be fixed by the Council."

It is undisputed that neither the provision for notice nor the provision for public hearing was complied with by the council. The

trial court found that the city had actual notice that the petition was not signed by 100 percent of the abutting landowners and concluded that the essentials of an estoppel were not present. Appellant contends that this conclusion was erroneous. We need not consider this contention since there is a clear showing of waiver of notice and hearing by Nemzek. He signed a petition warranting that he was the sole owner of the addition with knowledge that the petition presented a situation in which no notice or hearing was required by the ordinance. Having previously appeared before the council to inform them of his views, he had no desire to reappear before the council. In his own words: "I thought the further I stayed away the better I would be." Therefore, we hold that Nemzek has waived any right to assert that the action of the council was void for failure to give published notice of the proposed improvement or to hold a public hearing thereon. See, In re Appeal of Meyer from Paving Assessment, 158 Minn. 433, 439, 197 N. W. 970, 199 N. W. 746, 747; 11 Am. Jur., Constitutional Law, § 120; 16 C. J. S., Constitutional Law, § 89.

Respondent made other contentions in the trial court upon which the trial court made no findings. We have examined them carefully and find the evidence insufficient to support these contentions. We therefore conclude that the order of the trial court denying appellant's motion for a new trial was in error and that the order should be reversed and a new trial granted.

Reversed and new trial granted.