James E. **KLAPMEIER**, Appellant,

v.

**TOWN OF CENTER OF CROW WING COUNTY, Minnesota, et al.,**
**Respondents.**

No. C6–83–308.

Supreme Court of Minnesota.

March 30, 1984.

William P. Lines, Milaca, John E. Drawz, Minneapolis, for appellant.

Stephen C. Rathke, Brainerd, for respondents.

## OPINION

YETKA, Justice.

This case is before this court for the second time. This second appeal is from the judgment of the District Court of Crow Wing County, which dismissed a declaratory judgment action brought by appellant seeking to void a special assessment made by respondents. The trial court held that, although notice of the assessment hearing was statutorily and constitutionally deficient, the appellant had waived his right to set aside the assessment because of actual notice and laches. We reverse.

Appellant landowner is the sole owner of four lots in the Town of Center. At one time, he co-owned these lots with Robert W. Nyquist. In 1973, at the request of several lot owners, the Town of Center improved a road known as Executive Way, which abuts appellant's tracts on the south. The improvement cost $26,391. On October 2, 1974, appellant's tracts were assessed for half the cost of this improvement, and the tracts on the north were assessed for the other half. This court subsequently held these assessments invalid because they reflected the cost of the improvement rather than the enhanced

market value of the land. *Nyquist v. Town of Center*, 312 Minn. 266, 251 N.W.2d 695 (1977). Therefore, the assessments were set aside and the town was ordered to reassess the benefits of the improvement. Sometime in August 1977, appellant received notice of an informal meeting to be held on August 12 to consider the reassessment. At appellant's request, his attorney mailed a letter dated August 11, 1977, to the town board stating appellant's recommendations for reassessment.

Between August 12, 1977, and January 24, 1979, the town hired two consultants to apportion the reassessments. On January 24, 1979, at a workshop meeting, the town board adopted a resolution to reassess property owners for the cost of the road—$29,111.44, including interest. At a meeting of the Board of Supervisors on February 7, 1979, a public hearing on the reassessment as required by Minn.Stat. § 429.061 (1978) was set for March 9, 1979.

The town clerk published and mailed notice of this meeting to landowners in compliance with Minn.Stat. § 429.061, subd. 1 (1978). However, the published and mailed notices failed to mention appeal rights as required by the above statute. Furthermore, the trial court made a finding that appellant never received the mailed notice, either because he was out of the area or because it was mailed to an old address or both. The trial court also found that, because appellant and the former co-owner, Mr. Nyquist, were out of the area at the time of the March 9 meeting, they would not have attended the meeting regardless of whether they received notice.

Appellant first became aware of the March 9 meeting sometime in April of 1979 when he received a phone call from Robert Nyquist. On April 14, 1979, Mr. Nyquist, on his own and appellant's behalf, wrote a letter to the town clerk asking what action had been taken at the meeting. The letter requested a response within 10 days so that Mr. Nyquist and appellant could "act on that advice." Although the town clerk failed to respond within the requested 10 days, neither Mr. Nyquist nor appellant made further inquiry. In a letter dated May 2, 1979, the town clerk advised Mr. Nyquist and appellant that "no formal action was taken at (the) hearing." That same day, May 2, at its regular meeting, and without further published or mailed notice, the town board adopted the reassessment by resolution according to an assessment roll then on file. No notice of this action was published or mailed to appellant.

On August 1, 1979, the town board canceled the October 1974 assessment and determined to spread the reassessment in the years 1980–84. A total assessment of $15,570.60 was levied against appellant's tracts.

Appellant made no inquiry and took no legal action until June of 1981, despite the fact that his 1980 tax bill clearly showed a "reassessment" against his tracts. Appellant testified that he overlooked the reference to a reassessment on his 1980 tax bill and that he did not notice it until he received his 1981 tax bill. He said this happened because his tax bills always showed an assessment for Executive Way even after the original assessment was set aside. Appellant thought the 1980 tax bills were also referring to the original assessment. He testified that he noticed the reassessment in 1981 because he had placed a reminder in his tax files that his property could be subject to tax forfeiture after 7 years of non-payment. Therefore, in 1981, he made copies of his tax bills to send to his attorney and he also called the state auditor or treasurer to discover what action the state could take. It was at that time that he first realized a reassessment had been made. He commenced this action in June 1981.

The issues raised on this appeal are:
1. Whether notice of the reassessment hearing was defective;
2. Whether appellant waived his right to object to any inadequacy of notice;
3. Whether appellant's claim of inadequate notice is barred by laches?

1. The trial court stated that notice of reassessment was deficient in two ways: there was no statement of appeal rights as required by Minn.Stat. § 429.061, subd. 1 (1978), and there was no notice of an "adjourned meeting" as required by Minn.Stat. § 429.061, subd. 2 (1978). Since we agree that the failure to mention appeal rights in the notice of the March 9 meeting rendered that notice defective, we do not reach the issue of whether the May 2 meeting was an "adjourned meeting" requiring notice.

Minn.Stat. § 429.061, subd. 1 (1978) requires notice of special assessment hearings to state that a landowner has a right to appeal an assessment and to state the time in which such an appeal must be taken. Proper notice of assessment proceedings is a jurisdictional prerequisite to any action by the town board. *Sewall v. City of St. Paul*, 20 Minn. 459 (1874). There must be strict compliance with the statutory notice provisions, *Great Northern Railway Co. v. City of Minneapolis*, 136 Minn. 1, 161 N.W. 231 (1917). Thus, the failure to mention appeal rights in the published and allegedly mailed notice rendered that notice defective and the board without jurisdiction to make the reassessment.

2. The trial court held that even though the notice to appellant was deficient, he waived his right to object to the deficiency because he had actual knowledge both that reassessment was being considered and that he could appeal any town action. We do not agree that appellant's failure to act under the circumstances here constitutes a waiver of his right to object.

Mr. Klapmeier had a general knowledge that reassessment was underway as early as a year and a half before the actual reassessment hearing was held. In April of 1979, Mr. Klapmeier had the more specific knowledge that a public reassessment hearing had been held on March 9, 1979. Mr. Klapmeier also had actual knowledge of his right to appeal a special assessment because he had appealed the original assessment. However, he did not know when the town actually adopted the reassessment for purposes of filing his appeal nor that the town would even be taking formal action. In fact, the trial court found that he was "lulled * * * into thinking [he] would get further notice, *before* any formal action by the statement: 'No formal action was taken at this meeting' (the March 9 meeting)." The trial court noted that this letter was written on the same day that "formal action" *was* taken, May 2, 1979.

There is little case law in Minnesota on what constitutes waiver of notice of assessment and similar proceedings. The question presented here—whether inaction in the face of actual knowledge of reassessment and appeal rights constitutes waiver of a defect in notice—appears to be one of first impression. The authority relied upon by the trial court is either *dicta* or not in point. The trial court cites the following language from the early case of *State v. Johnson*, 111 Minn. 255, 126 N.W. 1074 (1910):

> [W]here a property owner stands by and witnesses the expenditure of public funds in improvements which confer special benefits upon his property, and where the character of the improvement is such that it must be paid for by an assessment upon the land benefited, he will not be permitted to question the validity of an equitable assessment levied for improvements made under color of law.

*Id.* at 259, 126 N.W. at 1075. This language is *dicta*. The court in *Johnson* actually held that the landowner's complaint was barred by the statute; thus, *Johnson* does not support the proposition that mere inaction constitutes waiver.

The trial court also relied on *In re Special Assessment by City of Moorhead*, 239 Minn. 351, 58 N.W.2d 746 (1953). There, the landowner petitioned for an improvement by signing a statement that he was the sole owner of the affected lots. The landowner knew that, by ordinance, the council could act upon such a petition without providing notice and a hearing. In contrast to the facts of the instant case, *Moorhead* involved an overt act taken with

the knowledge that such act dispensed with the right to notice. Here, appellant committed no overt act inconsistent with asserting his right to proper notice. On the contrary, his only overt act was to inquire of the town clerk whether any action had been taken at the March 9 meeting. This act is entirely consistent with asserting his right to notice.

There is one early case from which we can infer that there is no waiver by mere inaction. In *In re Meyer*, 158 Minn. 433, 199 N.W. 746 (1924), the landowner was not provided notice of the original improvement hearing, but did receive notice of and appear at the subsequent assessment hearing. The landowner objected to the town's jurisdiction to assess him for the improvement, and the town argued that he had waived his right to object by his inaction between the time of the improvement and the assessment. This court stated that waiver of notice or estoppel must be proved by a clear showing. *Id.* at 439, 199 N.W. at 747. There was no clear showing of waiver in *Meyer*, even though the landowner did not seek an injunction against the improvement, but rather waited until the assessment hearing to object. The landowner was under no duty to "rush into court sooner than he did" seeking an injunction when he had statutory remedies. *Id.* at 441, 199 N.W. at 748.

■ Although *Moorhead* and *Meyer* are not precisely in point, their facts and holdings support our conclusion that a clear showing of waiver of notice requires an act which is inconsistent with subsequent assertion of the right to notice, coupled with knowledge of that right. We do not have that here. Appellant in this case initiated no action other than to inquire what had happened at the March 9 meeting. Therefore, he did not waive his right to object to the defect in notice of the reassessment hearing.

■ 3. Finally, we consider whether appellant's claim of inadequate notice is barred by laches. The doctrine of laches depends on a factual determination in each case. The basic question is "whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Fetsch v. Holm*, 236 Minn. 158, 163, 52 N.W.2d 113, 115 (1952). The purpose of laches is "to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953).

The trial court concluded that appellant's failure to discover the reassessment until 1981, even though his 1980 tax bills clearly showed a levy against the reassessed tracts, was unreasonable as a matter of law. Thus, the court found appellant's claim barred by laches, stating that, "Any other conclusion would result in unacceptable cost and delay to the taxing authorities and, thus, other taxpayers in the taxing district."

■ While evidence of prejudice is not always essential to the application of laches, it is a circumstance of importance in determining whether a plaintiff's delay was reasonable. *Aronovitch v. Levy, id.* at 243, 56 N.W.2d at 574. Because there was absolutely no evidence or testimony taken at trial concerning prejudice to the town, we must reverse the trial court's conclusion that appellant's delay was unreasonable.

The trial court is reversed, the special assessment is voided, and the case is remanded to the trial court for such action as is necessary consistent with this opinion. The trial court shall instruct the Town of Center to take such further proceedings as it may see fit to commence.

PETERSON and SIMONETT, JJ., took no part in the consideration or decision of this matter.