**INDEPENDENT SCHOOL DISTRICT # 254, et al., Harold Nielsen, et al., Respondents,**

v.

**CITY OF KENYON, Appellant.**

**No. C1-87-63.**

Court of Appeals of Minnesota.

Sept. 1, 1987.

Franklin D. Peterson, Kenyon, for Independent School District #254, et al.

George L. May, Hertogs, Fluegel, Sieben, Polk, Jones & LaVerdiere, P.A., Hastings, Steven A. Jorstad, Wanamingo, for Harold Nielsen, et al.

David A. Rockne, Zumbrota, Thomas J. Radio, Brian W. Ohm, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for City of Kenyon.

Thomas L. Grundhoefer, League of Minnesota Cities, St. Paul, for amicus curiae League of Minnesota Cities.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This appeal is from a trial court judgment entered following filing of the court's order amending findings and conclusions and denying a new trial. The trial court held appellant city's special assessment levied against respondent landowners was invalid regarding certain storm sewer assessments. Appellant claims the trial court erred because the city (1) correctly interpreted its own ordinances in making the assessments and (2) remedied deficient notice by calling an additional hearing pursuant to Minn.Stat. § 429.071(2) (1984). We affirm.

## FACTS

In November 1981, appellant City of Kenyon hired an engineering firm to develop a comprehensive storm sewer plan for the city. A capital improvement program study completed earlier that year had established construction of a storm sewer system as a high priority.

On August 10, 1982, appellant's city council adopted Kenyon City Ordinance No. 213, which sets forth assessment procedures for public improvements and incorporates by reference the City of Kenyon Special Assessment and Local Improvement Guide. In the introduction, the Guide states special assessments should be made only against those whose property directly benefits from the improvement. Specifically regarding storm trunk sewer assessments, however, the Guide contrarily provides:

> The City Council shall determine the percent of the total cost assessed to property owners for storm trunk sewers. Such assessments shall be made against all property owners in the City on a square foot basis. However, should a developer request a parcel to be assessed on a per-lot basis, this shall be permitted.

On October 5, 1982, the city council passed a motion to allocate $100,000 in matching funds from the city's replacement fund toward the street and storm sewer project.

On October 25, 1982, after mailed and published notice, a feasibility hearing was held. The city council explained that $100,000 from the tax increment financing district established for respondent Harold Nielsen's elderly housing project would be used to partially offset the $185,000 cost of the sewer system. At the November 9, 1982 special council meeting, the city council awarded the sewer project construction contract for the 1982 improvement project.

At a November 16, 1982 meeting, the city council considered issuance of bonds for the storm sewer project. The council determined that 20% of the bond payment for the sewer project would be assessed against city-owned property. The remainder of repayments would be made with tax increment funds and general fund monies. The city's bond was accepted by F & M Marquette Bank and at a December 6, 1982

special meeting, the city council approved the sale of $235,000 in bonds.

In 1983, the city council's membership changed. The storm sewer construction project was completed. On October 6, 1983, the city council resolved to impose a special levy of $33,100 to retire the 1982 general obligation bonds. An additional special levy was imposed on October 9, 1984. Respondents cited these levies as further evidence of appellant's intent to generally finance the 1982 project.

On April 3, 1984, after mailed and published notice, the city council held a feasibility hearing regarding a 1984 improvement project including storm sewers, sanitary sewers, water mains and street improvement. This project would extend the completed 1982 improvement project. The notices advised citizens that approximately $330,000 of the 1984 improvement project total cost would be assessed against benefited property owners.

Construction contracts were awarded on July 10, 1984. Prior to that date the city council made several unnoticed project additions. Respondents' properties were affected for the first time by these add-on projects. The additions were also included in the July contracts.

After mailed and published notice was received by respondents, the city council on August 7, 1984 held a second feasibility hearing regarding the 1984 improvement project. This hearing was held on the advice of the Kenyon city attorney in an effort to correct previous notice deficiencies regarding the 1984 project.

On November 13, 1984, a properly noticed public hearing was held regarding special assessments for both the 1982 and 1984 improvement projects. This hearing resulted in a substantial change in method of payment for the 1982 storm sewer project; from payment through general financing to payment through special assessment. Following the hearing, the city council levied the special assessments for both projects.

The city insists its reason for specially assessing the projects was to avoid an unconstitutional application of its ordinance no. 213, which requires general assessment for storm sewer projects. The city council apparently thought a city-wide assessment could not be supported by a requisite showing of a city-wide benefit conferred.

Respondent landowners each submitted written objection to their respective assessments and properly appealed to the district court pursuant to Minn.Stat. § 429.081 (1984). These seven actions were consolidated for trial. Respondents complained that the special assessments grossly exceeded the value derived from the improvements and that appellant city improperly followed statutory procedure. A four-day trial was held in May 1986.

By order for judgment filed August 12, 1986, the trial court held the special assessments levied to pay for the 1982 and 1984 storm trunk sewer projects were invalid. The court found the assessments violated Kenyon City Ordinance No. 213, and appellant improperly failed to hold a feasibility hearing regarding the 1984 add-on projects prior to awarding the construction contracts.

Following post-trial motions by the City of Kenyon and several respondents, the trial court amended its findings and conclusions. The city's alternative motion for a new trial was denied. Judgment was entered December 3, 1986 from which appeal is made.

## ISSUES

1. Were respondents' due process rights violated when appellant altered its method of financing the 1982 improvement project after its completion?

2. Did the trial court err in finding appellant city failed to properly hold a feasibility hearing regarding certain improvements pursuant to Minn.Stat. § 429.031 (1984)?

## ANALYSIS

### I.

■ When the City of Kenyon first proposed the 1982 storm sewer improvement project, it unequivocally represented to

Kenyon citizens that the project would be paid for with general financing. First, matching funds from the city's replacement fund were allocated. Second, a tax increment financing district was established. Finally, the city determined that bonds would be issued for the project, 20% of which would be assessed against city-owned property and the remainder financed by tax increment funds and general fund monies. The sale of $235,000 in bonds was later approved by the city council.

In 1984, a year after the 1982 storm sewer project had been completed, the city council finally held an assessment hearing. It then contrarily determined that the 1982 project would be specially assessed. Appellant city recognizes the change in assessment theory was occasioned by a change in the city council's membership. However, the city asserts lack of detrimental reliance by respondent landowners regarding the initially proposed financing permitted the city council to alter its assessment plan. We disagree.

Respondents relied upon the city's representations regarding the 1982 project financing in expressing their opinions about the feasibility of that construction. When a citizen reflects upon whether a project is desirable, an integral factor present in that reflection is whether the improvement is affordable to *him* or *her*. The citizen is cognizant of the city's proposed method of financing in weighing this factor.

Here, when feasibility was still an issue, the city undeniably stated that general financing would be used. Subsequently, after the construction contracts had been awarded and the project completed, the city contradicted itself and specially assessed the improvement. Such action was improper.

The Minnesota Legislature clearly granted citizens the opportunity to voice their opinions regarding municipal improvement projects. Minn.Stat. § 429.031 requires that a properly noticed public hearing be held concerning any project's feasibility. As stated, financing is a central element in determining feasibility. If the project's financing is altered, its feasibility may also be changed. If financing is amended, landowners are entitled to another properly noticed public hearing to redetermine feasibility.

If Kenyon citizens had known the 1982 project was to be specially assessed, they may have voiced such strong objection that the improvement would not have been approved by a four-fifths majority of the city council. See Minn.Stat. § 429.031. However, Kenyon citizens never had an opportunity to express their opinions regarding feasibility of the project as specially assessed because financing was altered after the project was completed. The storm sewer improvement was already a fait accompli.

We hold the City of Kenyon was estopped from specially assessing the 1982 storm sewer project after initially deciding to generally finance the improvement.[1] The due process rights of respondents would be violated if under the circumstances here present a court were to permit appellant to reverse its initial representation regarding financing.

Because of our resolution of other issues in this matter, it is not necessary for us to reach appellant's arguments regarding constitutional application of Kenyon City Ordinance No. 213. The issue of the constitutionality of general assessments for storm sewers is not before us.

We do note, however, that an assessment which exceeds the special benefit to the property constitutes an unconstitutional taking without fair compensation. *Buettner v. City of St. Cloud*, 277 N.W.2d 199, 202 (Minn.1979). To specially assess property, land must be shown to have been specially benefited. See *Tri-State Land Co. v. City of Shoreview*, 290 N.W.2d 775, 777 (Minn.1980). Our review of the record does not indicate clearly that in regard to

---

1. We note, however, that the city was free to redetermine the project's financing at any time prior to award of the construction contracts. After that point, feasibility was no longer at issue and citizens were without an opportunity for participation. See Minn.Stat. § 429.031 (1984) (feasibility hearing required prior to award of improvement construction contract).

the storm sewer project, appellant demonstrated a special benefit by showing enhanced market value to assessed landowners. *See In re Village of Burnsville Assessment*, 310 Minn. 32, 40, 245 N.W.2d 445, 450 (1976) (proper value of a special benefit is determined by the enhanced market value of the benefited land). A review of the record before us reveals, we believe, weakness in appellant's argument that general assessment for storm sewer construction is unconstitutional.

## II.

■ Appellant city claims it properly noticed and held a remedial feasibility hearing pursuant to Minn.Stat. § 429.071, subd. 2.[2]

[I]n event the council * * * determines on advice of the municipal attorney that the assessment or proposed assessment or any part thereof is or may be invalid for any reason, the council may, upon notice and hearing as provided for the original assessment, make a reassessment or a new assessment as to such parcel or parcels.

Minn.Stat. § 429.071, subd. 2 (1984). Amicus Curiae League of Minnesota Cities supports appellant's position that this statute applies, and asserts that an undue hardship to Minnesota municipalities will result if innocent errors in special assessment proceedings cannot be corrected by a remedial hearing.

We agree, however, with the reasoning stated by the Minnesota Attorney General.

The requirement for the hearing on the improvement under [section 429.031] is jurisdictional and is included to afford owners whose properties would be benefited by the proposed improvement and subject to assessments therefor, the opportunity to be heard on the question of its desirability and feasibility. Compliance with the requirement is mandatory. Failure of such compliance precludes any assessment for the improvement.

Similarly, lack of the required public improvement hearing prevents applicability of 429.071 providing for supplemental assessments, to correct errors, omissions or mistakes in the assessment proceeding or, re-assessments when assessments are determined to be illegal, as in Subd. 2 provided.

Op.Atty.Gen. 408–C (July 10, 1956).

■ We do not discount the possibility of a remedial feasibility hearing held pursuant to Minn.Stat. § 429.031. Nothing in that statute prohibits allowing a city the opportunity to hold a properly noticed subsequent hearing to reanalyze an improvement project's feasibility. To not permit a remedial feasibility hearing would unduly burden cities with the obligation of holding error-free hearings and prohibit them from expanding an improvement project to its most efficient limits. However, the time period for holding a remedial feasibility hearing is limited. Section 429.031 states:

*Before the municipality awards a contract for an improvement * * * the* council shall hold a public hearing on the proposed improvement following two publications in the newspaper of a notice stating the time and place of the hearing, the general nature of the improvement, the estimated cost, and the area proposed to be assessed.

Minn.Stat. § 429.031, subd. 1 (1984) (emphasis added). Once the construction contract has been awarded, no additional feasibility hearings may be held. *See Klapmeier v. Town of Center*, 346 N.W.2d 133, 136 (Minn.1984) (there must be strict compliance with the statutory notice provisions of Minn.Stat. ch. 429). Any such hearing would be meaningless because the city is then already contractually committed to the project and feasibility no longer can be at issue. Any reconsideration of feasibility conceivably could lead to a breach of the construction contract.

Here the city council's August 7, 1984 hearing could not remedy due process defi-

---

2. Appellant and amicus curiae also assert Minn. Stat. § 429.051 (1984) provides that water, storm sewer, and sanitary sewer costs may be assessed even though a feasibility hearing has

not been held pursuant to Minn.Stat. § 429.031. However, their reasoning is misplaced because section 429.051 concerns subsequent additional assessments and is not applicable here.

ciencies concerning the 1984 extension project and its add-ons because the construction contracts had already been awarded on July 10, 1984. Respondents' first opportunity to be heard occurred at a time when they no longer had an opportunity to voice their opinions regarding feasibility or affordability. Due process had not been afforded to them. The city was without jurisdiction to make the special assessment. *See id.*

Appellant claims certain respondents waived their right to object to any procedural deficiencies.

A clear showing of waiver of notice requires an act which is inconsistent with subsequent assertion of the right to notice, coupled with knowledge of that right.

*Klapmeier*, 346 N.W.2d at 137. Mere inaction or silence does not constitute waiver. *See id.* at 136–37; *see also Downtown Development Project v. City of Marshall*, 281 N.W.2d 161, 163 (Minn.1979) (failure to enter an objection at hearings held preliminary to the adoption of the assessment does not waive a party's right to appeal). Respondents John Cole, Dennis Urness and Harold Nielsen attended the August 7, 1984 meeting and did not object to the feasibility of the additional improvements. Failure to object, however, after the construction contracts are awarded is irrelevant. As stated, at that point feasibility is no longer at issue.

The city asserts some respondents were present at council meetings held after April 3, 1984 when additional improvement projects were approved. Appellant also alleges respondents Cole agreed to the sewer improvement projects before their completion and therefore waived their right to challenge notice. The record, however, does not support a clear showing of waiver.

## DECISION

The trial court did not err in concluding the special assessments levied by appellant regarding the 1982 and 1984 storm trunk sewer projects were invalid and should be set aside.

Affirmed.