*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2421**

Michele Sykes,
Appellant,

vs.

Rochester City Council,
City of Rochester,
Respondents.

**Filed March 2, 2015
Affirmed
Reyes, Judge**

Olmsted County District Court
File No. 55CV116597

Michele Sykes, Rochester, Minnesota (pro se appellant)

Pamela L. VanderWiel, Everett & VanderWiel, P.L.L.P., Rosemount, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

Pro se appellant property-owner challenges respondent-city's ability to specially assess her property for work the city did cutting her grass, removing weeds, and removing trash and debris. On appeal from the district court's affirmance of the city's

assessments, appellant makes a number of claims arguing that the city's assessments were improper. We affirm.

## FACTS

Appellant Michele Sykes is the owner of property in Rochester, Minnesota. In May 2008, the City of Rochester received several complaints about the condition of Sykes's yard. After multiple inspections, the city determined that Sykes's yard violated the Rochester Code of Ordinances (RCO) because (1) the yard contained refuse in violation of RCO § 35.19, .21 (2014) and (2) the yard contained tall grass and weeds in violation of RCO § 48.03 (2014).

### *Debris Removal*

On May 12, 2008, Susan LeGare-Gulden, Rochester's Manager of Housing Inspection Services, received a complaint about an unsafe fence and improperly stored debris located on Sykes's property. LeGare-Gulden inspected the yard, met with neighbors, and left her business card and a summary of her report on Sykes's front door. On May 14, LeGare-Gulden sent two notices to Sykes alleging that her fence and debris violated RCO § 35.24, .21. The notices required correction of the violation no later than May 20, 2008. LeGare-Gulden returned to Sykes's property on the morning of May 20, 2008, and determined that no steps had been taken to correct the violations. She spoke with Sykes and gave her until the end of the day to make the corrections. Because no steps were taken as of 5:00 p.m. to correct the violations, LeGare-Gulden ordered the removal of an unstable fence, broken pots, dead plants, and other debris from the yard. A $315 bill was levied against Sykes's property for the debris removal.

*Weed Removal*

On May 20, 2008, Rochester's Parks and Recreation Department received a complaint of tall weeds in need of mowing at Sykes's property. The next day, weed inspector Jacob Ryg examined the property and determined that there was grass and weeds in excess of ten inches which occupied an area of at least 144 square feet and were located within 200 feet of the residence, thus violating RCO § 48.03. On May 23, 2008, Ryg notified Sykes of the violation and gave her five days to correct the violation. Sykes testified that she and a friend mowed the lawn on May 31 and June 2. On June 3, one of Ryg's interns inspected the property and determined that the yard remained in violation. Ryg testified that yards will typically remain out of compliance even after it is mowed when an owner fails to trim the grass and weeds growing close to objects, structures, and trees. Sykes admitted that neither she nor her friend had used a trimmer on her lawn. On June 9, the city hired a contractor to mow the tall grass and weeds located at Sykes's property and a $75.25 bill was levied.

Sykes did not pay either bill. The Rochester City Council adopted a special assessment against Skyes's property for the weed removal on December 1, 2008, and a special assessment for the debris removal on December 15, 2008. *See Sykes v. City of Rochester*, 787 N.W.2d 192, 194 (Minn. App. 2010). Sykes appealed the city's adoption of both assessments, and the district court granted summary judgment in favor of the city, reasoning that Sykes did not timely serve the notices of appeal for either the weed removal assessment or the debris removal assessment. *See Sykes*, 787 N.W.2d at 194. We reversed, ruling that because the city failed to properly notify Sykes of the

3

assessment hearings, both assessments were never adopted.  *Id*. at 198.  We set aside the assessments, "subject to reassessment by the city under section 429.071, subdivision 2." *Id*.

After our reversal, and on notice to Sykes, the city held a public hearing on November 15, 2010 to consider testimony on the proposed reassessment of Sykes's property.  Sykes submitted a written statement prior to the hearing.  The city continued the hearing until December 6, 2010, in order to consider Sykes's statements.  At the December 6 hearing, Sykes submitted a second written statement, and the city again continued the hearing until December 20, 2010.  On January 4, 2011, the city approved the special assessments for both the weed removal and debris removal.  But on July 6, 2011, the city rescinded both assessments because the city attorney advised the city that a clerical error may have been made.  Sykes was informed of the rescissions and was notified that another reassessment hearing was scheduled for August 1, 2011.  Prior to the hearing, Sykes, for the third time, dropped off a written statement.  At the hearing, the city considered all the testimony and documents which had been submitted at prior meetings, as well as Sykes's most recent statement.  The city eventually approved the special assessments for both the weed removal and the debris removal.  The district court affirmed the city's order, concluding that the removals and assessments were fair, reasonable, authorized by city ordinance and state statute, and that Sykes received all process due prior to the assessment.  Sykes appeals.

**D E C I S I O N**

Sykes makes a multitude of claims on appeal, all of which can be categorized into one of the following arguments: (1) the city failed to follow the appropriate reassessment procedures; (2) the district court's findings of fact are clearly erroneous; (3) the district court's findings regarding the credibility of witnesses are clearly erroneous; (4) the district court abused its discretion by wrongfully excluding evidence; (5) Sykes's procedural due-process rights were violated; and (6) the city's abatement procedures violate the Equal Protection Clause of the U.S. Constitution. Sykes also makes various complaints regarding the city's authority to undertake the abatement procedures. None are persuasive.

## I. Did the city follow the appropriate reassessment procedures?

Sykes alleges that the city did not follow the required assessment procedures. "Interpretation of a statute presents a question of law, which we review de novo." *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011). "The interpretation of an ordinance is a question of law for the court, which we review de novo." *Eagle Lake of Becker Cnty. Lake Ass'n v. Becker Cnty. Bd. of Comm'rs*, 738 N.W.2d 788, 792 (Minn. App. 2007).

### A. Notice requirement

Sykes argues that the city failed to properly notify her of the assessment proceedings involving her property. "Proper notice of assessment proceedings is a jurisdictional prerequisite to any action" by a city council. *Klapmeier v. Town of Ctr. of Crow Wing Cnty.*, 346 N.W.2d 133, 136 (Minn. 1984). Notice that a city council will

5

consider levying a special assessment must be published in the newspaper at least once, and must be "mailed to the owner of each parcel described in the assessment roll." Minn. Stat. § 429.061, subd. 1 (2014).[1] "Such publication and mailing shall be no less than two weeks prior to such meeting of the council." *Id.*

> Such notice shall state the date, time, and place of such meeting, the general nature of the improvement, the area proposed to be assessed, the total amount of the proposed assessment, that the proposed assessment roll is on the file with the clerk, and that written or oral objections thereto by any property owner will be considered.

*Id.* The notice must also state the property owner's rights and responsibilities with respect to appeal, and "must state in clear language the following information:"

> (1)   the amount to be specially assessed against that particular lot, piece, or parcel of land;
> (2)   adoption by the council of the proposed assessment may be taken at the hearing;
> (3)   the right of the property owner to prepay the entire assessment and the person to whom prepayment must be made;
> (4)   whether partial prepayment of the assessment has been authorized by ordinance;
> (5)   the time within which prepayment may be made without the assessment of interest; and
> (6)   the rate of interest to be accrued if the assessment is not prepaid within the required time period.

*Id.* "There must be strict compliance with the statutory notice provisions" and failure to comply leaves the council without authority to adopt the assessment. *Shortridge v.*

---

[1] Although the assessments in question are from 2010 and 2011, we note that the relevant statutes have not been amended since then.

*Daubney*, 400 N.W.2d 841, 844 (Minn. App. 1987), *rev'd on other grounds*, 425 N.W.2d 840 (Minn. 1988). Substantial compliance on the part of the city is insufficient. *Id*.

On July 12, 2011, the city sent Sykes two notices of the proposed assessments; one for the weed removal and one for the debris removal.[2] Sykes contends that these notices were deficient because they failed to advise Sykes of the deferment option under Minn. Stat. § 435.193–.195 (2014). But an examination of the notices belies such a claim. The notices make specific reference to sections 435.193 and 435.195 when outlining the deferment option, state that Rochester has in fact adopted the deferral option, and go so far as to list the conditions in which deferral is available.

Sykes correctly points out that the language in the notice allowing for deferral for a person retired by virtue of a "permanent physical disability" differs slightly from the statutory language allowing for deferral for a "permanent and total disability." Minn. Stat. § 435.193(a)(1). Admittedly, strict compliance with the statutory notice provisions is required. *Klapmeier*, 346 N.W.2d at136. However, the statutory notice provisions referenced in *Klapmeier*, and again in *Sykes*, all relate to the language of section 429.061, which employs the mandatory phrase "shall." *See* Minn. Stat. § 645.44, subd. 16 (2014) (explaining that the use of "shall" denotes language which is mandatory). The notice language of section 435.193(a) is much more permissive,

---

[2] Both notices included her name, legal description of her property, and the amount of the proposed assessment. Also included was the rate of interest to be charged if the assessment was not prepaid within the required time period, a description of what that required time period was, and the person to whom prepayment must be made. It was the lack of this specific information that caused the city's previous notices to be deficient. *Sykes*, 787 N.W.2d at 196.

using the phrase "may" and "at [the city's] discretion."  Minn. Stat. § 435.193(a); *see also* Minn. Stat. § 645.44, subd. 15 (2014) (explaining that the use of "may" denotes language which is permissive).  Nothing in section 435.193(a) suggests that the exact terminology must be copied from the statute if a city decides to employ a deferral program and, in fact, section 435.193(b) states that it is up to the city to decide how to determine when a disability exists.  *See* Minn. Stat. § 435.193(b).  Moreover, Sykes has submitted no evidence that she applied for and was denied a deferment, nor has she shown how this minor change in language prejudiced her in any way.  She has made no claim of disability.  Accordingly, in this case, this appears to be a distinction without a difference.

**B.    Number of reassessments allowed.**

Sykes next argues that the district court misinterpreted Minnesota law because the city should have been allowed only one reassessment.  Sykes bases this argument on the language of section 429.071, subdivision 2, which states:

> When an assessment is, for any reason whatever, set aside by a court of competent jurisdiction as to any parcel or parcels of land, or in event the council finds that the assessment or any part thereof is excessive or determines on advice of the municipal attorney that the assessment or proposed assessment or any part thereof is or may be invalid for any reason, the council may, upon notice and hearing as provided for the original assessment, make a reassessment or a new assessment as to such parcel or parcels.

Minn. Stat. § 429.071, subd. 2 (2014).

"Our goal when interpreting statutory provisions is to ascertain and effectuate the intention of the legislature.   If the meaning of a statute is unambiguous, we interpret the

8

statute's text according to its plain language. If a statute is ambiguous, we apply other cannons of construction . . . ." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010) (quotation and citations omitted). Sykes does not contend that the language of section 429.071, subdivision 2 is ambiguous. Instead, Sykes argues that the city is only allowed one reassessment because the plain language of section 429.071, subdivision 2, uses the phrase "original assessment." Sykes contends that by using this phrase, the statute must limit the number of assessments because there can only be one "reassessement" of an "original assessment." We disagree. The relevant portion of the statute states that "the council may, upon notice and hearing as provided for the original assessment, make a reassessment." Minn. Stat. § 429.071, subd. 2. The term "original assessment" is only used to require that the notice and hearing requirements necessary in the first assessment will be similarly necessary in a reassessment. Nowhere does the plain language indicate that the number of reassessments is capped at one. Sykes offers policy considerations for capping the number of assessments at one, but because she fails to show that section 429.071, subdivision 2, is ambiguous, such considerations are not appropriate. "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007).

**II. Were the district court's findings of fact clearly erroneous?**

Sykes makes a number of arguments that the district court's factual findings were clearly erroneous. "[W]e review the district court's factual findings for clear error. That is, we examine the record to see if there is reasonable evidence in the

9

record to support the court's findings." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotations and citations omitted). "To conclude that findings of fact are clearly erroneous we must be left with the definite and firm conviction that a mistake has been made." *Id*. (quotation omitted).

There is ample evidence on the record supporting the district court's findings that Sykes's property violated Rochester ordinances. During the three-day trial, Ryg testified about the tall grass and weeds on the property and how he determined that Sykes's lawn was in violation. LeGare-Gulden testified about what she witnessed on the property, including an improperly secured fence, lawn edging, plastic sheeting, dead plant material, an inoperative grill, and broken chairs. Photographs, documents, inspection cards, and invoices were all submitted into evidence. Because there is ample evidence to support a reasoned decision, the district court's findings will not be disturbed as clearly erroneous.

### III. Were the district court's findings regarding the credibility of the witnesses clearly erroneous?

Sykes makes a number of contentions relating to the credibility of the witnesses that testified against her at trial, going so far as to accuse some of violating the Rochester Code of Ethics. Appellate courts defer to district court credibility determinations. *See* Minn. R. Civ. P. 52.01; *see also Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004) (stating that, on appeal, appellate courts "neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the

10

factfinder"). The district court made detailed and specific findings weighing the credibility of all of the witnesses, and this court defers to those findings.

**IV. Did the district court abuse its discretion by wrongfully excluding evidence?**

Sykes contends that the district court abused its discretion when it refused to admit video of city council meetings, the testimony of one of Skyes's witnesses, and certain color photographs. "The admission of evidence rests within the broad discretion of the [district] court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45-46 (Minn. 1997) (quotation omitted).

A review of the record reveals that the evidence in question was excluded for good reason. The district court refused to admit the video because it would be cumulative of the minutes from the meeting that were already in evidence. The district court refused to admit the testimony of Sykes's witness because the testimony was going to relate to the condition of the property post-2008, and thus would be irrelevant to whether the 2008 abatement action was reasonable. Finally, the district court refused to admit photographs because Sykes could not testify as to when the photos were taken and thus could not establish the proper foundation. "Evidentiary rulings concerning materiality, *foundation*, remoteness, *relevancy*, or the *cumulative nature* of the evidence are within the [district] court's sound discretion." *Johnson v. Wash. Cnty.*, 518 N.W.2d 594, 601 (Minn. 1994) (emphasis added) (quotation omitted). Because there is nothing in the record to suggest that these rulings were based on an erroneous view of the law, the district court did not abuse its discretion in excluding the

evidence.

## V. Were Sykes's procedural due-process rights violated?

Procedural due process should "be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." *Sweet v. Comm'r of Human Servs.*, 702 N.W.2d 314, 320 (Minn. App. 2005), *review denied* (Minn. Nov. 15, 2005). Nuisance-abatement procedures are subject to two overriding principles that serve to protect the rights of property owners: (1) abatement and removal should be exercised with caution and (2) notice and the opportunity to be heard should be granted without restraint. *Village of Zumbrota v. Johnson*, 280 Minn. 390, 395-96, 161 N.W.2d 626, 630 (1968).

Here, the abatement and removal procedures were exercised with caution. After her inspection, LeGare-Gulden met with neighbors and left her business card and a report notifying Sykes of the violation. LeGare-Gulden sent to Sykes two notices of the violations which stated that Sykes was required to correct them no later than May 20, 2008. When no steps had been taken to correct the violations on the morning of May 20, LaGare-Gulden spoke with Sykes and gave her until the end of the day. Ryg, the weed inspector, was equally as cautious, notifying Sykes of the violation and giving her five days to mow the tall grass. It was not until 11 days later, when the lawn was still in violation, that Ryg abated the nuisance.

Sykes was granted fair notice and opportunity to be heard. Sykes was allowed an opportunity to speak at every assessment hearing but refused to do so. Her written

12

statements were entered into the council record and multiple continuances were granted to review her statements.  Although Sykes contends that she should have been notified of her right to appeal to the Housing Board, no such right exists.  The Housing Board is limited to the Housing Code of Chapters 32 to 39 of the RCO, and thus has no authority to hear appeals of violations based on tall grass and weeds, which are listed in Chapter 48.  *See* RCO § 33.06 (2014) (limiting the appeals process to a review of violations and emergency orders which were issued "pursuant to the housing code").  Moreover, while the debris-removal ordinance is listed within the Housing Code, section 35.23 states that violations of the debris-removal ordinance will be "subject to abatement by the City as provided in Section 35.24."  RCO §§ 33.21, subd. 2, .23 (2014).  Section 35.24 describes the exact process the city employed.  RCO § 35.24 (2014).  Lastly, section 33.06 states that an appeal will be granted "upon filing in the office of the director of building and safety a written petition requesting such hearing and setting forth a brief statement of the grounds therefore.  Said petition shall be filed within ten days after the notice or order is served."  RCO § 33.06.  This language only requires appeals to be heard if a petition is correctly filed.  It does not state that the city must notify a violator of the petition process and Sykes does not claim that she filed a petition and was denied.

Because the record shows that the abatement and removal processes were conducted with caution, notice, and the opportunity to be heard, Sykes's due-process rights were not violated.

**VI.    Whether Sykes's argument based on the Equal Protection Clause was properly pleaded.**

Sykes argues that an abatement system where city officials investigate properties based on complaints they receive from the public violates her equal protection rights. Sykes's equal protection argument is not properly before this court. Minnesota is a notice pleading state. *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 917-18 (Minn. 2012); *see also* Minn. R. Civ. P. 8.01 (requiring pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief"). While absolute specificity in pleading is not required, "[i]t is fundamental that a party must have notice of a claim against him and an opportunity to oppose it before a binding adverse judgment may be rendered." *Folk v. Home Mut. Ins. Co.*, 336 N.W.2d 265, 267 (Minn. 1983). Here, Sykes never pleaded a cause of action under the Minnesota or United States Constitution. Instead, her petition expressly limited the scope of her appeal to chapter 429. Under chapter 429, the options available to a district court reviewing a city's adoption of an assessment are limited to "either affirm the assessment or set it aside and order a reassessment as provided in section 429.071, subdivision 2." Minn. Stat. § 429.081 (2014). Thus, the issues present on appeal are confined to whether the city's assessment amount was fair and reasonable, and whether Sykes was provided due process during the proceedings. *See Am. Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 789 (Minn. App. 2011) (affirming the city's assessment because there was no evidence that the amount was unreasonable and noting that neither due-process nor fairness concerns were implicated).

14

## VII. Do Sykes's other claims have merit?

Sykes makes a number of other arguments that are equally without merit. Many of these arguments can be refuted by an examination of the record.

Sykes argues that the city lacked authority under its charter to perform the assessment. Rochester has been a home-rule charter city since 1904, and section 19.00 of the city charter provides: "For purposes of initiating public improvement projects financed in part by the use of special assessments, the city may exercise the powers and shall follow the procedures provided by Minnesota Statutes, Chapter 429, as the same may be amended from time to time." Rochester, Minn., City Charter (RCC) ch. 19, § 19.00 (2014). Sykes argues that nuisance abatement does not qualify as a "public improvement project" and therefore cannot be authorized by the city. While the charter does not define "improvement" as it relates to nuisance abatement, RCC § 19.00 makes clear that the city "shall follow the procedures provided by Minnesota Statutes, Chapter 429." *Id.* Section 429.021, subdivision 1 lists "improvements authorized" and specifically provides for the ability "to abate nuisances." Minn. Stat. § 429.021, subd. 1(8)(2014). Accordingly, the city had authority to perform the assessment.

Sykes argues that the city attorney did not have authority to advise the city council on the assessment proceedings. But section 8.00 of the charter specifically states that "[The city attorney] shall attend the meetings of the common council and give his opinion upon any legal question which may be submitted to him officially by the common council." RCC § 8.00 (2014). Furthermore, section 429.071, subdivision 2, provides that reassessment is appropriate where it is determined "*on advice of the municipal*

15

*attorney* that the assessment or proposed assessment or any part thereof is or may be invalid for any reason." Minn. Stat. § 429.071, subd. 2 (emphasis added). The city attorney has authority to comment on the matter.

Sykes briefly contends that she was not provided just compensation for the taking of her property. Case law is clear, however, that "when the state properly uses its police powers to abate a nuisance by destroying property, no taking occurs and the landowner is not entitled to compensation." *City of Minneapolis v. Meldahl*, 607 N.W.2d 168, 171 (Minn. App. 2000). Only if the city "fails to follow the proper procedure in razing property" is a plaintiff entitled to damages. *Id*. No property was razed in the matter at hand.

Finally, Sykes offers a number of conclusory statements without providing any citation or basis in law. These statements will not be considered. *Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (stating that this court does not address allegations unsupported by legal analysis or citation). This holds true even for pro se parties, to whom we afford some leeway but who are still generally held to the same standards as other attorneys. *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 1987).

**Affirmed**.